UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Roger Krueger; Jeffrey Olson; Edward Pope; Deborah Tuckner; Bernice Hillukka; and Susan Wones, individually and as representatives of a class of similarly situated persons, and on behalf of the Ameriprise Financial 401(k) Plan,<br><br>    Plaintiffs,<br><br> v.<br><br>Ameriprise Financial, Inc.; Ameriprise Financial, Inc. Employee Benefits Administration Committee; Michelle Rudlong; Ameriprise Financial, Inc. 401(k) Investment Committee; Compensation and Benefits Committee of the Board of Directors of Ameriprise Financial, Inc.; Ira D. Hall; Warren D. Knowlton; W. Walker Lewis; Siri S. Marshall; Jeffrey Noddle; Richard F. Powers III; Robert F. Sharpe, Jr.; and John Does 1-60,<br><br>    Defendants. | Case No.  11-CV-02781 (SRN/JSM) |

**REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR
FAILURE TO STATE A CLAIM**

## TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................1

ARGUMENT ..........................................................................................................2

    I.    *BRADEN* REQUIRES DISMISSAL OF PLAINTIFFS' CORE CHALLENGE TO THE PLAN'S INVESTMENT LINEUP .....................2

    II.    PLAINTIFFS' COLLATERAL CHALLENGES ALSO MUST BE DISMISSED ..........................................................................................7

        A.    Counts III And IV Fail To Allege Prohibited Conduct .........................7

        B.    Count VII Fails Because Plaintiffs Allege No Facts Showing That Recordkeeping Costs Were Unreasonable Relative To Services Provided ........................................................................9

        C.    Counts II And VI Are Derivative And Conclusory ............................10

        D.    Count V Fails Because Ameriprise's Sale Of Its Recordkeeping Business Was A Corporate, Not Fiduciary, Action ............................12

        E.    Count VIII Does Not Allege A Cognizable Claim For Unjust Enrichment ........................................................................13

CONCLUSION .....................................................................................................14

# INTRODUCTION

Plaintiffs' Opposition attempts to avoid Defendants' dismissal arguments by creating an artificial division between the law of the Eighth Circuit and that of other circuits. No such division exists, and Plaintiffs' appeal to *Braden* does not help them. As Defendants demonstrated in their motion to dismiss, in *Braden v. Wal-Mart Stores, Inc.*, the Eighth Circuit adopted a standard—fully consistent with the approach taken by other appellate courts—that requires dismissal here. Defendants' position thus is not at odds with *Braden*'s legal standard, but rather flows directly from it.

Plaintiffs contrive confusion about the relevant legal standard because they have no answer to Defendants' arguments about their deficient allegations. Plaintiffs have had every opportunity to assert facts constituting a cognizable claim under *Braden*, but *none* of the key allegations from which the *Braden* Court inferred a potential fiduciary breach appears in Plaintiffs' amended complaint. Indeed, after two complaints and full briefing on this motion, Plaintiffs still have not identified allegations plausibly supporting an inference that Defendants breached the general fiduciary duties imposed by ERISA § 404.

Plaintiffs do not challenge the breadth, performance, or expenses of the 6,000-plus funds available to Ameriprise Plan participants. Instead, Plaintiffs contend that the very inclusion of Ameriprise-affiliated investment options in the

lineup constitutes a fiduciary breach. But there is no authority for such a categorical rule, for good reason: the Department of Labor expressly authorizes a plan to offer affiliated investment options in its lineup. As Defendants have explained, a plan lineup that contains a sufficient mix of investments with a variety of risk and fee profiles does not give rise to a § 404 claim. That some of those investment options are affiliated does not change this result. Plaintiffs' core fiduciary breach claim thus fails as a matter of law.

Plaintiffs' remaining claims similarly fail. While the inclusion of affiliated funds in a lineup may constitute a prohibited transaction under certain circumstances, Plaintiffs have not alleged such circumstances. Moreover, Plaintiffs accept that their derivative claims fall with their core fiduciary challenge. Plaintiffs cannot use unfounded rhetoric and conclusions to transform an authorized practice into a violation of ERISA. The Complaint must be dismissed.

## ARGUMENT

### I. *BRADEN* REQUIRES DISMISSAL OF PLAINTIFFS' CORE CHALLENGE TO THE PLAN'S INVESTMENT LINEUP.

Plaintiffs' core fiduciary claim fails under the standards established by multiple appellate courts, including the Eighth Circuit in *Braden*. The Plan's mix of investments is perhaps the most expansive in any case to date. (Defts' Mem. of Law ("Mem.") 15-16.) Plaintiffs thus sidestep the merits of Defendants' arguments, and instead argue that *Braden*, in a supposed departure from other

2

circuits, does not require factual allegations "directly" establishing a breach. Plaintiffs' argument misses the mark.

Defendants do not argue that a complaint must allege facts directly establishing a breach. The question in *Hecker*, *Renfro*, *Loomis*, *and Braden* was what facts *indirectly* suggesting a breach suffice to plausibly infer a violation of § 404. Those decisions have recognized that the threshold is high where, as here, the plan offers a sufficient mix of investments, foreclosing the inference that plan fiduciaries breached their duties in selecting those investments. (Mem. 13-15.) *Braden* permitted claims to proceed when a plan offered a "relatively limited menu of funds," but only because the plaintiff *also* alleged a totality of specific facts that together created a reasonable inference of wrongdoing. 588 F.3d 585, 595-96 (8th Cir. 2009). As Defendants have explained, *none* of these allegations (including a static lineup, pointless costs, unjustified quids pro quo, and inclusion of only retail shares) are alleged here. (Mem. 16-21.) Indeed, Plaintiffs do not even respond to the failings recited by Defendants, except to try to discount the Plan's self-managed brokerage window ("SMBA"). Plaintiffs' attempt to rely on *Braden* therefore fails.

Plaintiffs try to overcome these deficiencies by reiterating that the Plan offered affiliated investments. But their effort to attach an unlawful purpose to the Plan's use of affiliated investments ignores that ERISA and its implementing

3

regulations *specifically permit* the practice. Defendants' pursuit of expressly authorized conduct does not evidence a fiduciary breach. As *Braden* itself teaches, an "inference pressed by the plaintiff is not plausible if the facts he points to are precisely the result one would expect from lawful conduct in which the defendant is known to have engaged." 588 F.3d at 597.

Plaintiffs suggest they have pleaded improper conduct because they allege that the affiliated funds were relatively expensive or untested. But as the *Braden* Court recognized, "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund," 588 F.3d at 596 n.7 (quotation omitted), and Plaintiffs cite no authority for their implicit proposition that a plan cannot offer new investment funds. What matters is that Plan fiduciaries have used a prudent *process* in composing the Plan's lineup. *Id.* at 595 ("In evaluating whether a fiduciary has acted prudently, we … focus on the process by which it makes its decisions rather than the results of those decisions."). The availability of allegedly "better options" is thus relevant *only* when a complaint alleges "a relatively limited menu of funds," raising an inference that the process of selection was flawed. *Id.* at 596.[1]

---

[1] Plaintiffs' reliance on a few negative "facts" about the affiliated funds is therefore legally improper, particularly given Plaintiffs' blatant cherry-picking of those facts. For example, Plaintiffs purport to compare the affiliated funds' fees to those of "comparable" Vanguard funds, without identifying the comparator funds. (First Am. Compl. ("Compl.") ¶ 61.) By all appearances, Plaintiffs are comparing the actively-managed funds in the Plan's lineup to Vanguard's *passively-managed*

4

Plaintiffs do not attempt to justify their claims in terms of the basic holding in *Hecker*, *Unisys*, *Loomis*, and *Braden* that the presence of allegedly problematic investments in a plan lineup does not show a breach of fiduciary process in selecting investments unless the plan offers an insufficient mix of investments. *Braden*, 588 F.3d at 596. Instead, they point to cases noting that offering a large menu of funds does not give a fiduciary free reign to act imprudently. (Pls.' Opp'n ("Opp'n") 22-23.) Of course it doesn't. The question is what indirect allegations suffice to make out a claim of imprudence, and Plaintiffs do *not* argue that the allegation supporting those cases—offering company stock despite clear signs the company was failing—somehow bolsters their own generalized challenge to affiliated investments. *See DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 423 (4th Cir 2007) (U.S. Airways stock fund); *Pfeil v. State Street Bank & Trust Co.*, 671 F.3d 585 (6th Cir. 2012) (G.M. stock fund). *Braden* requires, at the very least, allegations of factual circumstances plausibly suggesting improper conduct in the context of a limited investment lineup, and Plaintiffs have alleged neither. *Supra* at 2-3.

Plaintiffs cite *Gipson v. Wells Fargo & Co.*, 2009 WL 702004 (D. Minn. Mar. 13, 2009), a pre-*Braden* decision, to argue that the bare allegation of cheaper

---

index funds, which are *not* in fact "comparable." *See Loomis v. Exelon Corp.*, 658 F.3d 667, 669-70 (7th Cir. 2011) (explaining differences between actively-managed and passively-managed funds); Mem. 18-19 n.7.

5

or better performing funds is sufficient to survive dismissal. (Opp'n 21.) But *Braden* expressly rejected that position. *See* 588 F.3d at 596 n.7 ("bare allegation" of cheaper alternative investments is insufficient).[2]

Finally, recognizing that the Plan's 6,000-investment offering is deeply problematic for their claim that one may infer a fiduciary breach from the inclusion of some affiliated funds, Plaintiffs argue that the SMBA should be excluded from any consideration of the Plan's range of investment options. Plaintiffs contend that the SMBA is not attractive to unsophisticated investors preferring the more extensive investment-selection services associated with the Plan's other investments options. (Opp'n 24-26.) But their argument merely underscores the breadth of the Plan's complement of funds. Plaintiffs admit that the SMBA's features have never prevented Plan participants from investing in its funds (Compl. ¶ 83), and thus cannot avoid accounting for the SMBA funds in the Plan's lineup. Despite Plaintiffs' unsupported rhetoric that funds in the SMBA paid "kickbacks" to Defendants (*cf.* Mem. 20-21), the Complaint does not claim that Defendants breached fiduciary duties in offering those 6,000 funds.

---

[2] Moreover, Plaintiffs' allegations fall short even of those in *Gipson*, where the plaintiffs alleged, *inter alia*, that the plan could have invested in cheaper *and* higher-return share classes of the same funds. 2009 WL 702004 at *5. While Plaintiffs allege a "cheaper" share class was available, the Complaint explains that the additional fees for the share class selected helped finance plan administrative expenses (Mem. 19-20 n.9), and Plaintiffs do not otherwise allege a difference in returns among the classes.

*Braden* does not sanction complaints based on lawful conduct and unfounded conclusions. Count I must be dismissed.

## II. PLAINTIFFS' COLLATERAL CHALLENGES ALSO MUST BE DISMISSED.

### A. Counts III And IV Fail To Allege Prohibited Conduct.

Plaintiffs' prohibited transaction claims (Counts III and IV) do not allege conduct coming within the statutory prohibitions of ERISA § 406. ERISA does not prohibit a plan's investment in affiliated mutual funds unless the plan has paid exceptional fees or invested on terms less favorable than those offered to ordinary investors. (Mem. 22-24.) And the statute does not prohibit investment in affiliated collective trusts if the fund receives only reasonable compensation and the investment is permitted under plan terms. (*Id.*) Courts have therefore dismissed prohibited transaction pleadings that do not allege noncompliance with PTE 77-3 or § 408(b). (*Id.*)

Plaintiffs do not dispute that affiliated investments complying with PTE 77-3 and § 408(b) do not violate ERISA. Instead, Plaintiffs argue that *Braden* allows a prohibited transaction claim to survive dismissal *whatever* the plaintiff's allegations because PTE 77-3 and § 408(b) are affirmative defenses. (Opp'n 26-28.) *Braden* held no such thing. In *Braden*, the plaintiff "alleg[ed] … that the revenue sharing payments far exceeded the value of services actually performed," and those allegations "[we]re sufficient to shift the burden" to show the

7

compensation was in fact reasonable.  588 F.3d at 601 & n.9.[3]

Plaintiffs make no comparable allegations here.  (*See* Mem. 25-28.) Plaintiffs assert that the collective trusts' fees are "unreasonable," yet they nowhere allege that the cost of those investments outpaced their value—the standard for reasonableness expressed in *Braden*—or allege any facts to support such a conclusion.  And while Plaintiffs hope to avoid the application of PTE 77-3 with an allegation that the Plan invested in the R4 share class of affiliated funds instead of an allegedly cheaper R5 share class (Opp'n 28-29), Plaintiffs' own allegations demonstrate that the R4 share class financed plan administrative services in a way that R5 shares did not.  (Compl. ¶¶ 62-65; *cf. Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009) ("If the plaintiff voluntarily provides unnecessary facts in her complaint, the defendant may use those facts to demonstrate that she is not entitled to relief." (quotation omitted)).)  Plaintiffs' share-class allegations thus do not support an inference that R5-class investors received their shares on more favorable terms than the Plan.  According to Plaintiffs' own allegations, the Plan and other R4 class shareholders paid more *and received more* in return.  *Compare Gipson*, 2009 WL 702004, at *4 (no allegation

---

[3] *See also Jones v. Bock*, 549 U.S. 199, 215 (2007) (explaining that dismissal is proper if allegations show that affirmative defense bars relief, and collecting cases holding the same); *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 983 (8th Cir. 2008) ("If an affirmative defense … is apparent on the face of the complaint, … [it] can provide the basis for dismissal under Rule 12(b)(6)." (citation omitted)).

8

that the pricier share class offered additional services). Plaintiffs have not offered sufficient allegations to force the litigation of their prohibited transaction claims, and Counts III and IV should be dismissed.

> **B.    Count VII Fails Because Plaintiffs Allege No Facts Showing That Recordkeeping Costs Were Unreasonable Relative To Services Provided.**

Defendants have explained that the excessive-fee claim in Count VII fails because Plaintiffs allege no facts showing the recordkeeping fees paid, the services provided, or how the fees charged to the Plan were excessive in light of those services—making it impossible to infer that the Plan paid unreasonable recordkeeping fees. (Mem. 26-28.) Rather than confront this argument directly, Plaintiffs make the blanket assertion that a lack of competitive bidding together with their conclusory charge of excessive recordkeeping fees suffices to show a failure of process in purchasing recordkeeping services. (Opp'n 31.) But this merely returns the inquiry to whether Plaintiffs have sufficiently alleged that the Plan's recordkeeping costs were excessive—and Plaintiffs offer *no response* to Defendants' explanation that Plaintiffs have not. Moreover, Plaintiffs do *not* contend that ERISA always requires competitive bidding, nor do cases they cite support that conclusion. *See George v. Kraft Foods Global*, 641 F.3d 786, 798-99 (7th Cir. 2011) (holding district court made improper credibility determination on summary judgment by questioning relevance of expert's opinion on competitive

9

bidding in that case); *Tussey v. ABB, Inc.*, 2012 WL 1113291, at *9-*13 (W.D. Mo. Mar. 31, 2012) (finding failure to monitor recordkeeping fees based on factual findings not alleged here, including a finding that an outside consultant told the plan's sponsor that "it was overpaying for recordkeeping").[4] Plaintiffs have no basis to demand a competitive bidding process when they have not alleged that the process the Defendants *did* use was flawed.

Nor can Plaintiffs remedy these inadequacies by referring to revenue sharing as "kickbacks" or alluding to the Plan's use of affiliated service providers. Plaintiffs *admit* that the widespread practice of revenue sharing is perfectly lawful. (Opp'n 31; Mem. 11-12, 22 n.11; *accord Tussey*, 2012 WL 1113291, at *16.) And the use of affiliated service providers is also unambiguously permitted. 29 U.S.C. § 1108(b)(2).

Finally, Plaintiffs do not dispute that Count VII repackages their core fiduciary challenge to the investment lineup and therefore fails if Count I is dismissed.

### C. Counts II And VI Are Derivative And Conclusory.

Plaintiffs do not dispute that the derivative claims in Counts II and VI must be dismissed if their other counts fail. They challenge only Defendants' argument that Plaintiffs' monitoring claim in Count II should be dismissed regardless.

---

[4] Plaintiffs mischaracterize *Tussey* as forbidding the retention of "float interest" on plan assets (Opp'n 31; *see Tussey,* 2012 WL 1113291, at *32-*35), but their claims do not challenge the handling of float interest in any event.

10

Confronted with Plan language refuting their allegations of certain Defendants' fiduciary status (Mem. 33), Plaintiffs contend they cannot be faulted for inadequate pleading because information about who was obliged to monitor the Plan's frontline fiduciaries is "hidden." (Opp'n 32-33.) But the duty to monitor fiduciaries follows the authority to appoint them, and the appointment process is explained in the Plan document, which Plaintiffs had before amending their complaint. (Doc. 41-2.) Courts have not hesitated to dismiss fiduciary duty claims where, as here, plaintiffs' fiduciary status theories are contradicted by a plan's governing documents, particularly following *Twombly*. *See Hecker*, 556 F.3d at 583-84; *Renfro v. Unisys Corp.*, 671 F.3d 314, 323-24 (3d Cir. 2011).

Plaintiffs next argue that Ameriprise assumed a monitoring duty by appointing individuals to corporate positions when the Plan designated the holders of those positions as Plan fiduciaries. But ERISA "does not require that day-to-day corporate business transactions, which may have a collateral effect on prospective, contingent, employee benefits, be performed solely in the interest of plan participants." *Hickman v. Tosco Corp.*, 840 F.2d 564, 566 (8th Cir. 1988) (quotation omitted). Ameriprise must make hiring and promotion decisions based on corporate interests, and doing so does not transform it into a plan fiduciary.

Finally, Plaintiffs fail to address the general insufficiency of their monitoring allegations and do not contest the basic principle that conclusory monitoring claims

must be dismissed consistent with *Twombly*. (Mem. 32-33; *see Balsley v. Delta Star Emp. Stock Ownership*, 2009 WL 4823196, at *6 (N.D. Cal. Dec. 10, 2009) ("the complaint contains no allegations as to how these Defendants breached any duty to monitor").) Counts II and VI should thus be dismissed.

### D. Count V Fails Because Ameriprise's Sale Of Its Recordkeeping Business Was A Corporate, Not Fiduciary, Action.

Relying on the same allegations that underlie their other claims, in Count V Plaintiffs attempt to generate an additional claim from Ameriprise's sale of its recordkeeping business to Wachovia. But, as Plaintiffs *concede*, that business transaction was not a fiduciary decision and ERISA does not require corporate decisions to advance participant interests. (Opp'n 34; *see* Mem. 28-29.)

Plaintiffs argue that Count V survives nonetheless because the Plan's pre-sale payment of allegedly excessive fees inflated the sale price of the business and the sale somehow motivated Defendants' post-sale retention of Wachovia as recordkeeper. But those theories are entirely redundant with Plaintiffs' theories in Count VII and do not place the legitimacy of the sale itself in question. Plaintiffs do not allege, for example, that the sale itself committed the Plan to retain Wachovia, or to handle the Plan's assets any particular way. (Mem. 29.) Accordingly, Count V should fail for the same reasons as Count VII or be dismissed as duplicative.

Plaintiffs also contend that Count V states a non-fiduciary claim against

12

Ameriprise for restitution of the sale proceeds under 29 U.S.C. § 1132(a)(3), but offer no basis for their suggestion that the recordkeeping business or the sale proceeds constituted Plan assets. Plaintiffs do not allege that the Plan owned part of the recordkeeping business or that Plan assets were otherwise committed in the sale. Even if they had, Plaintiffs fail to allege the tracing requirements necessary to a restitution claim. *See, e.g.*, *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (equitable restitution exists only "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession"). Count V must be dismissed.

### E.   Count VIII Does Not Allege A Cognizable Claim For Unjust Enrichment.

In their opening brief, Defendants described the considerable authority directing courts to avoid "extending remedies not specifically authorized by [ERISA's] text." *Knudson*, 534 U.S. at 209; *see* Mem. 32-33. Plaintiffs urge the Court to sanction their nonstatutory claim for unjust enrichment regardless, based on cases involving a specific scenario—employers seeking to recover mistaken overpayments from plans—that has no relevance here. Plaintiffs cannot appeal to the reasoning of those cases, which allowed restitutionary claims because ERISA itself does not remotely cover an employer's rights against a plan in such circumstances. *See, e.g.*, *Young Am., Inc. v. Union Cent. Life Ins. Co.*, 101 F.3d

546, 548 (8th Cir. 1996).  ERISA *does* specify the rights and remedies applicable to the conduct alleged by Plaintiffs, and Plaintiffs are not entitled to a failsafe if their statutory claims cannot fit within the clear boundaries Congress placed on that relief.  (Mem. 32-33.)

## CONCLUSION

Defendants respectfully request that the Court dismiss Plaintiffs' Amended Complaint.

Dated:  May 30, 2012                    O'MELVENY & MYERS LLP

By:  s/ Benjamin G. Bradshaw
Benjamin G. Bradshaw (admitted *pro hac vice*)
bbradshaw@omm.com
Shannon Barrett (admitted *pro hac vice*)
sbarrett@omm.com
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

and

DORSEY & WHITNEY LLP
Stephen P. Lucke (#154210)
lucke.steve@dorsey.com
Kirsten E. Schubert (#0388396)
schubert.kirsten@dorsey.com
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600
Facsimile: (612) 340-2868

*Attorneys for Defendants*
*Ameriprise Financial, Inc. et al.*