UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ROGER KRUEGER, et al.,                                    CIVIL NO. 11-2781 (SRN/JSM)

    Plaintiffs,

v.                                                                           <u>ORDER</u>

AMERIPRISE FINANCIAL, INC., LLC, et al.,

    Defendants.

    JANIE S. MAYERON, U.S. Magistrate Judge

    The above matter came on before the undersigned at a status conference on August 26, 2013, upon defendants' request for clarification of this Court's Order dated August 15, 2013 [Docket No. 182].  Heather Lea, Esq., Michael Wolff, Esq. and Troy Doles, Esq. appeared on behalf of plaintiffs.  Benjamin Bradshaw, Esq. and Tom Swigert, Esq. appeared on behalf of defendants.  Subsequent to this status conference, Ameriprise provided to this Court additional information bearing on its request for clarification and this Court held two other status conferences to address the request.  Heather Lea, Esq., Michael Wolff, Esq. and Troy Doles, Esq. appeared at these conferences on behalf of plaintiffs.  Benjamin Bradshaw, Esq., Abby Johnson, Esq., Jeffrey Fowler, Esq., and Tom Swigert, Esq. appeared at these conferences on behalf of defendants.

    The Court, being duly advised in the premises, upon all of the files, records, the proceedings herein and for the reasons stated forth on the record at the hearing, now makes and enters the following Order.

IT IS HEREBY ORDERED:

1.  With respect to that portion of this Court's Order dated August 15, 2013, ordering the production of certain information sought by plaintiffs' Document Request Nos. 53-55 and 57-63 regarding other retirement plan clients of Ameriprise, (see Order at pp. 75-76), Ameriprise shall produce the information ordered by this Court for those clients who have invested $500 million or more in Ameriprise Trust Company collective trust funds and separately managed accounts (collectively referenced as "investment products" or investment vehicles") at any time between January 1, 2005 and the present.

2.  If plaintiffs develop evidence through discovery that Ameriprise: (a) engaged in particularized negotiations with other retirement plan clients regarding fees for comparable Ameriprise investment products, or provided pricing for fees more favorable that the published schedules of fees; (b) used metrics or criteria other than size of the client (as determined by total dollar value of assets held by the plan, number of beneficiaries in the plan, or size of the client's investments in Ameriprise investment products) for determining whether and to what extent to engage in particularized negotiations with a client regarding fees, or to provide pricing for fees more favorable than the published schedules of fees; or (c) does have summary data or reports that would allow it to obtain without significant burden the information sought by Document Request Nos. 53-55 and 57-63 for all its retirement plan clients, then plaintiffs may raise with this Court the limitations it placed on plan size as set forth in its August 15, 2013 Order.

Dated: September 27, 2013          *s/ Janie S. Mayeron*
                                    JANIE S. MAYERON
                                    United States Magistrate Judge

**MEMORANDUM**

In its Order dated August 15, 2013, this Court addressed plaintiffs' motion to compel discovery regarding Ameriprise's relationships with other non-affiliated, defined contribution plans pursuant to plaintiffs' Document Request Nos. 53–55, 57–63. Plaintiffs asserted that the discovery sought regarding other retirement plan clients was relevant to their contention that the fees charged by the investment options in the Ameriprise Plan were excessive; was designed to counter Ameriprise's fifth affirmative defense that plaintiffs' claims were precluded under ERISA and its exemptions, because the fees charged to the Plan were reasonable; and was relevant to whether Ameriprise breached its fiduciary duties when it invested in affiliated funds that charged fees that were excessive relative to those available from comparable mutual funds. Plaintiffs also argued that the reasonableness of Ameriprise's fees could be measured by comparisons to the fees charged to "non-captive" purchasers of their services—i.e. non-employee clients. Ameriprise did not dispute the relevancy of the information sought; rather it complained that the burden of responding to these requests was crushing, as it had hundreds of clients about which plaintiffs were seeking information, and it would take years to collect responsive information and at an enormous expense to Ameriprise.

Ultimately, the Court concluded that plaintiffs only needed information from those plans that were comparable to the Ameriprise Plan in terms of assets and services. Taking into account the sheer number of retirement plan clients to whom Ameriprise offered its investment products, the Court limited the production of the information itemized in the Order to those plans which were "equal or larger in size (with size determined by total dollar value of assets held by the plan or number of beneficiaries in

the plan) to the Ameriprise 401(k) Plan at any time during the period of January 1, 2005 to the present." Order, p. 75.

At the status conference on August 26, 2013, Ameriprise informed the Court that Ameriprise Trust Company ("ATC") is the entity which sold the different investment products to the Ameriprise Plan and other clients, and that it does not know or keep records on the size of its other clients as defined by the Court in the Order. Rather Ameriprise stated that ATC only knows the size of the investment products sold to each of its clients; there are about 45 other investment vehicles; and if it had to gather the information for all investment vehicles and for all clients that with investments in them, it would involve producing information for hundreds and hundreds of plans.

In order to address Ameriprise's representation that it did not possess the information ordered by the Court and to find a means to get at comparable plans, at the request of the Court, Ameriprise provided to the Court and plaintiffs a list of its various collective trusts and separate managed accounts and the number of plans invested in each such investment vehicle for years 2005 through 2013, along with the minimum investments required for any investment product. The information indicated that the number of plans invested in each collective trust fund ranged from the high of 960 plans in 2005 to 312 plans in 2013 (the number of plans went down each year; the lowest was 312 plans in 2012); the number of separately managed account plans went from 16 plans in 2005 to 11 plans in 2013 (the number of plans went down each year; the lowest was 10 plans in 2012); and that the first minimum investments were put in place in 2011 for some, but not all, of the collective trusts.

Ameriprise also informed the Court that while it had previously maintained information regarding the size of its clients in a third-party recordkeeping database

through ATC's Retirement Services Business, when ATC sold its recordkeeping business to Wachovia in 2006, it did not retain a copy of the database after mid-2007. However, Ameriprise indicated that ATC does maintain data regarding the total value of assets invested by each plan in ATC's various investment products.

During the period of 2005 to the present, the Ameriprise Plan has ranged in size from $500 million to $1.2 billion. The Court asked Ameriprise to inform the Court and plaintiffs the number of clients whose investments in ATC's collective trusts and separately managed accounts equaled or exceeded $500 million at any time during the period 2005 through the present. Ameriprise reported there were six ATC clients that met this criteria. Therefore, consistent with this Court's ruling that plaintiffs were entitled to certain information responsive to Document Request Nos. 53–55, 57–63 for plans comparable in size to the Ameriprise Plan, the Court determined that Ameriprise should provide that information for these six plans.

In addition, the Court informed plaintiffs that if they developed evidence through discovery that Ameriprise did offer or provide for comparable investment products more favorable pricing on fees than the published fee schedules, or that Ameriprise used criteria other than size of the client for determining when to provide pricing for fees more favorable than the published schedules of fees, or that Ameriprise did possess summary data or reports that would allow it to obtain without significant burden the information sought by Document Request Nos. 53-55 and 57-63 for all its retirement plan clients, then plaintiffs could revisit the limitations on plan size, as set forth in the Order.

J.S.M.