IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

ROGER KRUEGER, et al.,

*Plaintiffs*,

v.

No. 11-CV-02781 (SRN/JSM)

AMERIPRISE FINANCIAL, INC., et al.,

*Defendants*.

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION TO CERTIFY CLASS ACTION**

This is an action under Employee Retirement Income Security Act (ERISA). See Doc. 67 (Mem. & Order on Mot. to Dismiss). "Congress enacted ERISA to regulate comprehensively certain employee benefit plans and 'to protect the interest of participants in these plans by establishing standards of conduct, responsibility, and obligations for fiduciaries.'" *Id.* at 14 (quoting *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 413 F.3d 897, 906–07 (8th Cir. 2005) (citations omitted)). ERISA imposes stringent fiduciary duties upon those who have authority or control over retirement plans such as Plaintiffs' 401(k) Plan—duties that are "the highest known to the law". *Id.* (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009)); *Martin v. Feilen*, 965 F.2d 660, 664 (8th Cir. 1992); see 29 U.S.C. §1104(a), §1105(a), §1106.

"ERISA imposes upon fiduciaries twin duties of loyalty and prudence[.]" *Braden*, 588 F.3d at 595; *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 143 n.10 (1985). The duty of loyalty requires a fiduciary to "discharge his duties with respect to a plan solely in the

interest of the participants and beneficiaries and for the exclusive purpose of providing

benefits to participants and their beneficiaries and defraying reasonable expenses of

administering the plan[.]" 29 U.S.C. §1104(a)(1)(A); see also 29 U.S.C. §1103(c)(l);

*Braden*, 588 F.3d at 595. Except in circumstances not applicable to this case, "the assets

of a plan shall never inure to the benefit of any employer[.]" 29 U.S.C. §1103(c)(l). The

duty of loyalty requires fiduciaries to act with an "eye single" to the interests of

participants. *Pegram v. Herdrich*, 530 U.S. 211, 235 (2000). "Perhaps the most

fundamental duty of a trustee is that he must display throughout the administration of the

trust complete loyalty to the interests of the beneficiary and must exclude all selfish

interest and all consideration of the interests of third persons." *Id.* at 224 (quotation marks

and citations omitted).

The duty of prudence requires fiduciaries to act "with the care, skill, prudence, and

diligence under the circumstances then prevailing that a prudent man acting in a like

capacity and familiar with such matters would use in the conduct of an enterprise of a like

character and with like aims[.]" 29 U.S.C. §1104(a)(1)(B); *Braden*, 588 F.3d at 595; *Roth*

*v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 917 (8th Cir. 1994); see also Doc. 67 at 14–

19.[1]

ERISA compels a breaching fiduciary to make good to a plan all losses resulting

from the fiduciary's breach of duty and to restore to the plan all profits the fiduciary earns

---

[1] All Doc. page references are to the ECF header page.

from its use of plan assets. 29 U.S.C. §1109(a).[2] A breaching fiduciary also is subject to

such other equitable or remedial relief as the court may deem appropriate, including

removal of the fiduciary. *Id.*

ERISA authorizes any plan participant to bring a civil action to enforce ERISA's

fiduciary duties and to enforce the breaching fiduciary's personal liability for plan losses

and other remedial relief. 29 U.S.C. §1132(a)(2).[3] Actions under §1132(a)(2) are

"brought in a representative capacity on behalf of the plan as a whole" and the remedies

under § 1109(a) "protect the entire plan." *Braden*, 588 F.3d at 593 (quoting *Russell*, 473

U.S. at 142 & n.9). Numerous courts, consequently, have recognized that ERISA

fiduciary breach actions such as this one are "paradigmatic" class actions. *In re Schering*

*Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009); *Tussey v. ABB, Inc.*, No.

06-4305, Doc. 183 at 19, 2007 U.S. Dist. LEXIS 88668 at 27 (W.D.Mo. Dec. 3, 2007).

For the following reasons, this action equally qualifies as a Rule 23(b)(1) class action.

## I.    Plaintiffs' claims.

The Ameriprise Financial 401(k) Plan was established by a written plan document on

October 1, 2005. Doc. 60-1 at 428–502; 29 U.S.C. §1102(a)(1). The Plan is an individual

account, defined contribution plan governed by ERISA. Doc. 72 ¶6.[4] Since its creation,

---

[2] "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

[3] "A civil action may be brought—...(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title."

[4] Answer to First Amended Complaint.

the Plan has had over 10,000 participants. Declaration of Kurt Struckhoff ¶3, ex. 1.

Plaintiffs Roger Krueger, Jeffrey Olson, Deborah Tuckner, Susan Wones, and

Margene Bauhs are current or former participants in the 401(k) Plan. Doc. 72 ¶¶13–19.[5]

Defendants are the individuals and entities Plaintiffs contend are the fiduciaries who are

liable to the Plan for the losses caused by their breach of fiduciary duties. 29 U.S.C.

§1109(a). For ease of reference, and because individual defendant liability does not affect

certification of the proposed class, all defendants are referred to herein as Ameriprise.

See Doc. 67 at 2–12.

Plaintiffs allege seven counts of fiduciary breach. Count I asserts that Ameriprise

provided imprudent and unreasonably expensive investment options in the Plan that

benefitted Ameriprise at the expense of the Plan and were inferior to the investments

available to the Plan. Doc. 45 ¶¶107−17.[6] It seeks to hold defendants jointly and severally

liable for restoring to the Plan the losses caused by those breaches and the profits

defendants gained from their misuse of Plan assets. *Id.* Count II asserts that Ameriprise

and its Compensation and Benefits Committee separately breached their duties of loyalty

and prudence by failing to properly monitor and replace the fiduciaries over whom they

had authority or control, who caused the losses in Count I. *Id.* ¶¶118−25. Counts III and

---

[5] Former participants can bring a §1132(a)(2) action on behalf of a plan when they have a colorable claim to vested benefits that would be due upon proof of their claims of fiduciary breach. *Adamson v. Armco, Inc.*, 44 F.3d 650, 653−54 (8th Cir. 1995)(citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117–18 (1989)); *Harzewski v. Guidant Corp.*, 489 F.3d 799, 804 (7th Cir. 2007); 29 U.S.C. §1002(7). All Plaintiffs were participants at some point during the time in suit and thus would be entitled to further distributions of recovered Plan damages allocated to their accounts. The distinction between participants and beneficiaries is irrelevant to this motion and both are referred to herein by "participants". See 29 U.S.C. §1002(7)–(8).
[6] First Amended Complaint. Plaintiffs have moved to file a Second Amended Complaint that does not substantially alter the allegations described above.

IV assert that Ameriprise's actions constitute prohibited transactions under 29 U.S.C.

§1106(a)(1)(C) and (D) and 29 U.S.C. §1106(b) because they resulted in unreasonable

compensation. *Id.* ¶¶126−40. Count V seeks to recover for the Plan the profits Ameriprise

gained from the breach of duties in paying excessive compensation to Ameriprise

subsidiary Ameriprise Trust Company (ATC) as the Plan's trustee and recordkeeper,

selling Ameriprise's recordkeeping business to Wachovia Bank, and then paying

excessive compensation to Wachovia as Plan recordkeeper for Ameriprise's gain. *Id.*

¶¶141−51. Count VI asserts that Ameriprise Financial Inc. knowingly participated in all

these breaches of fiduciary duty and prohibited transactions and therefore is liable to

disgorge all revenue it or its subsidiaries received as a result of their transactions with the

Plan, and their earnings thereon under 29 U.S.C. §1132(a)(3). *Id.* ¶¶152−57. Count VII

asserts Ameriprise breached its duties of prudence and loyalty generally by causing the

Plan to pay excessive recordkeeping fees through revenue sharing, float, and other

sources. *Id.* ¶¶158–67.

   In sum, Plaintiffs assert two broad categories of fiduciary breach: providing the Plan

with imprudent and disloyal investment options and causing the Plan to pay excessive

expenses of administration for recordkeeping. Plaintiffs provide details, with supporting

evidence, of Ameriprise's fiduciary breaches in this respect in their Memorandum In

Opposition To Ameriprise's Motion For Summary Judgment [Doc. 164, sealed at

defendants' request] (MIO).[7] They summarize some of those details here to illustrate the

nature of their claims.

---

[7] Defendants also requested the sealing of most of the exhibits submitted in support of the MIO.

**A.      Imprudent and disloyal investment options.**

Plaintiffs allege Ameriprise imprudently and disloyally selected proprietary funds despite their higher expenses and poor performance compared to other options available to the Plan and also imprudently and disloyally used higher-cost versions of those proprietary funds than the Plan could have invested in. Plaintiffs contend Ameriprise did this to seed new and untested mutual funds, or failing funds, to make them more marketable and thereby boost Ameriprise's business and to provide itself unreasonable compensation at the cost of losses to the Plan from excessive fees and underperformance of investments relative to prudent alternatives. Doc. 63 at 19–23; Doc. 67 at 20–21.

For example, in 2006 Ameriprise included as Plan investments eight of its Retirement Plus mutual funds that had only been created that year without engaging in any process to determine that those funds were better or even as good as existing non-proprietary funds that had good performance histories and lower fees. MIO at 12; Doc. 165-6 at 6; Doc. 165-7 at 1, 4; Doc. 165-2[8] at 5–6, 12–13. Those funds invested exclusively in Ameriprise mutual funds. MIO at 12; Doc. 165-7 at 2–3, 5–6. The Plan was an imprudently large shareholder in the Retirement Plus funds. MIO at 12; Doc. 165-10 at 76; Doc. 165-2 at 33. Defendants put a higher-cost share class of those funds in the Plan, even though the Plan could have used a lower-cost share class. MIO at 12–13; Doc. 165-8 at 2–6. The Retirement Plus Funds failed the Investment Committee's criteria for retaining investments in nearly every quarter they were in the Plan, yet Ameriprise kept them in the Plan through 2011. MIO at 13; Doc. 165-11. Ameriprise did not remove them

---

[8] Sealed at defendants' request.

from the Plan until after Plaintiffs filed this lawsuit, when they switched the Plan to non-proprietary, lower-cost collective trust alternatives to mutual funds. MIO at 13; Doc. 165-2 at 50–51. Shortly thereafter, Ameriprise pulled the Retirement Plus funds from the market altogether. MIO at 13; Doc. 165-12 at 3. In seeking replacements for the Retirement Plus funds, the Plan fiduciaries were instructed by Ameriprise's CEO of U.S. Asset Management to disregard the prudent and well-performing Vanguard target date funds merely because they were passive investments that were contrary to Ameriprise's business model of active investment. MIO at 15–17; Doc. 165-18 at 21; Doc. 165-19 at 9; Doc. 165-20 at 1; Doc. 165-21.[9] And the Plan fiduciaries—all Ameriprise officers—duly complied. MIO at 17; Doc. 165-2 at 45; Doc. 165-10 at 8, 10–12.

Among other examples, Ameriprise included in the Plan its Disciplined Equity Fund, Balanced Fund, and Diversified Bond Fund, even though those Funds failed Ameriprise's own investment-selection criteria. MIO at 14–15; Doc. 165-13; Doc. 165-14 at 6; Doc. 165-42 at 30–31, 86–87, 100–01; Doc. 165-43 at 6–7, 25–26, 28–29; Doc. 165-44 at 1, 10–12. Instead of removing the Disciplined Equity Fund, Ameriprise merged another failed mutual fund into it, which boosted its assets and thus boosted the asset-based fees Ameriprise received from the Plan's investments in that Fund. MIO at 14; Doc. 165-14 at 6; Doc. 165-9 at 28; Doc. 165-15. The Plan also imprudently was the largest investor in the Disciplined Equity Fund, which was also the largest investment of the Retirement Plus Funds. MIO at 14; Doc. 165-16 at 2; Doc. 165-17 at 2–11. Ameriprise retained the

---

[9] Passive investments have lower costs because they are not actively traded, but instead invest in a fixed index.

Disciplined Equity Fund in the Plan despite consistent poor performance until March 2011. MIO at 15; Doc. 165-2 at 46.

As with nearly all of the proprietary mutual funds Ameriprise included in the Plan, Ameriprise used higher-cost share classes than were available to the Plan, which again boosted Ameriprise's revenues at the cost of the Plan's retirement assets. MIO at 10, 14–15; Doc. 152-3 at 41, 69. In fact, Ameriprise did not even consider lower-cost collective investment trust versions of the same mutual funds it selected for the Plan until after Plaintiffs filed this lawsuit. MIO at 10; Doc. 165-1; Doc. 165-2 at 50–51. Now, Ameriprise *is* in the process of moving the Plan into lower-cost collective investment trusts, an action Plaintiffs contend they could have and as prudent and loyal fiduciaries should have at least considered and could have done long ago. *Id.* Plaintiffs contend and believe similar evidence will prove that Ameriprise engaged in similar acts of disloyalty and prudence in selecting each of the Plan's Ameriprise-proprietary investment options, by failing to consider non-proprietary alternatives, failing to use better-performing non-proprietary alternatives, and selecting higher-cost share classes instead of available lower-cost share classes of the same mutual funds or collective trust and separately managed account versions of the same investments.

**B.     Unreasonable recordkeeping fees.**

The second broad category of fiduciary breach involves Ameriprise's causing the Plan to pay unreasonable recordkeeping fees through revenue sharing of Plan investment option fees and float first to Ameriprise's own subsidiary ATC and then to Wachovia, who bought ATC's recordkeeping business. MIO at 19–21; Doc. 67 at 38–39; Doc. 152-1

at 187, 359; Doc. 152-3 at 191;[10] Doc.165-9 at 28; Doc. 165-25 at 5. From the inception of the Plan until 2012, Ameriprise did not negotiate a specific recordkeeping fee for the Plan, much less a reasonable recordkeeping fee, which is an expense of administering the Plan. 29 U.S.C. §1103(c)(1), §1104(a)(1)(A); MIO at 20–21; Doc. 165-24; Doc. 165-5; Doc. 165-25. In fact, Plaintiffs have found no evidence of any decision-making process to hire or retain ATC, or a decision on the manner and amount of recordkeeping compensation the Plan should pay. *Id*. Ameriprise also never put the Plan's recordkeeping services out for competitive bidding as a means to ensure the Plan was paying only reasonable administrative expenses. MIO at 27.

Ameriprise never monitored the amount of revenue sharing the Plan's trustees and recordkeepers received, much less determined that those amounts were reasonable from year to year, or recovered for the Plan the revenue sharing payments from Plan investment options that exceeded a reasonable recordkeeping fee. MIO at 20–21, 27; see Doc. 165-5. That, despite the fact that these Plan fiduciaries were specifically advised to do so as far back as 2007. MIO at 27; Doc. 165-9 at 16. Only after Plaintiffs filed this lawsuit did Ameriprise negotiate a specific per-participant fee for recordkeeping and remove revenue sharing from Plan investments, something Ameriprise could have done from the beginning. MIO at 26–27; Doc. 165-2 at 58–61.

Plaintiffs contend that the recordkeeping compensation through revenue sharing and float was excessive, just as Ameriprise's consultant informed the fiduciaries after

---

[10]   After Wells Fargo & Company acquired Wachovia Bank, it rebranded Wachovia as "Wells Fargo Institutional Retirement and Trust" (Wells Fargo) in March 2010. Doc. 60-1 at 364.

Plaintiffs filed this lawsuit. MIO at 25–26; Doc. 165-28 at 21; Doc. 165-41 at 3. That

obviously redounded to the benefit of ATC and hence Ameriprise. But it also benefitted

Ameriprise even after the sale of its recordkeeping business to Wachovia, because

Wachovia promised to pay a portion of that excessive compensation to Ameriprise for the

following 18 months, ultimately resulting in an additional sales price payment to

Ameriprise of $25 million. MIO at 28–29; Doc. 165-26 at 8, 17–18; Doc. 165-27; Doc.

165-40; Doc. 165-45 at 2. Because the sale to Wachovia was based on the Plan's

excessive recordkeeping fees and retaining Wachovia as Plan recordkeeper for at least an

additional 18 months, Plaintiffs contend a portion of Ameriprise's profits from that sale

belong to and should be restored to the Plan. MIO at 29; Doc. 45 at 35–36; Doc. 67 at

40–41; 29 U.S.C. §1109(a).

## II.    Plaintiffs' proposed class.

Plaintiffs seek to act on behalf of all participants and beneficiaries in their Plan as to

all of the claims they assert. Plaintiffs therefore define their class as follows:

> All current and former participants and beneficiaries of the Ameriprise
> 401(k) Plan who were affected by the breach of fiduciary duties alleged in
> Plaintiffs' complaint, excluding those individuals who breached their
> fiduciary duties as alleged in Plaintiffs' complaint.

The class period starts on the date the Plan began—October 1, 2005. The class period

ends on the date through which Plaintiffs are able to calculate the Plan's losses (and

Ameriprise's profits), which will depend upon the progress of discovery in this case, but

likely is no later than the discovery cut-off date.

In order to obtain class certification, Plaintiffs must show that they satisfy each of the

elements of Rule 23(a) and one of the elements of Rule 23(b). Fed.R.Civ.P. 23(a)–(b).

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ___, 131 S.Ct. 2541, 2548–49 (2011). As

shown in Part III, Plaintiffs satisfy all of the prerequisites of Rule 23(a). As shown in Part

IV, Plaintiffs also satisfy the requirements of Rule 23(b)(1)(A) and (B).

   In many ways this action is similar to *Tussey v. ABB, Inc.*, No. 06-4305 (W.D.Mo.),

in which the district court certified a similar class regarding similar claims. See *id.*, Doc.

183, 2007 U.S. Dist. LEXIS 88668 (Dec. 3, 2007). The Eighth Circuit rejected the

defendants' petition to appeal that class certification under Fed.R.Civ.P. 23(f). *Id.*, Doc.

211-1 (Feb. 12, 2008), No. 07-8023 (8th Cir. Feb. 5, 2008). Defendants did not challenge

the class certification in their appeals from the judgment on the merits. See Br. for ABB

Appellants, *Tussey v. ABB Inc.*, Nos. 12-2056, 12-2060, 12-3794, 12-3875 (Feb. 26,

2013); Br. for Defs.-Appellants Fidelity Management Trust Co. et al., *Tussey v. ABB,

Inc.*, Nos. 12-2060, 12-3794 (Feb. 26, 2013).

   The Court should determine whether to certify a class action "[a]t an early

practicable time" after the action commences. Fed.R.Civ.P. 23(c)(1)(A). The court must

conduct a "'rigorous analysis' to ensure that the prerequisites of Rule 23 are satisfied."

*Elizabeth M. v. Montenez*, 458 F.3d 779, 784 (8th Cir. 2006) (quoting *Gen. Tel. Co. of the

S.W. v. Falcon,* 457 U.S. 147, 161 (1982)). That inquiry can "overlap with the merits of

the plaintiff's underlying claim" where the "class determination generally involves

considerations that are enmeshed in the factual and legal issues comprising the plaintiff's

cause of action." *Comcast Corp. v. Behrend*, 569 U.S. ___, 133 S.Ct. 1426, 1432 (2013).

However,

> Rule 23 grants courts no license to engage in free-ranging merits inquiries
> at the certification stage. Merits questions may be considered to the
> extent—but only to the extent—that they are relevant to determining
> whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. ___, 133 S.Ct. 1184, 1194

(2013). A court "has no 'authority to conduct a preliminary inquiry into the merits of a

suit' at class certification unless it is necessary 'to determine the propriety of

certification[.]'" *Id.* at 1195 (quoting *Dukes*, 131 S.Ct. at 2541 n.6).

Because "class certification decisions are generally made before the close of merits

discovery, the court's analysis is necessarily prospective and subject to change, and there

is bound to be some evidentiary uncertainty." *Cox v. Zurn Pex, Inc.*, 644 F.3d 604, 613

(8th Cir. 2011)(citing *Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005)). The

court's certification decision is "inherently tentative" and may be revisited and amended

at any time before entry of final judgment as the evidence and claims evolve. *Id.*;

Fed.R.Civ.P. 23(c)(1)(C).

## III.    Plaintiffs satisfy the prerequisites of Rule 23(a).

Rule 23(a) provides four prerequisites to class certification:

> One or more members of a class may sue or be sued as representative
> parties on behalf of all members only if:
>     (1) the class is so numerous that joinder of all members is impracticable;
>     (2) there are questions of law or fact common to the class;
>     (3) the claims or defenses of the representative parties are typical of the
>     claims or defenses of the class; and
>     (4) the representative parties will fairly and adequately protect the
>     interests of the class.

Plaintiffs satisfy each prerequisite for the following reasons.

**(1) Numerosity.**

While a number of factors are relevant to this inquiry, the most obvious is the number of persons in the proposed class. *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982). "In addition to the size of the class, the court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members." *Id.* at 559–60. The Plan had at least 10,000 participants each year from 2005 through 2012. Struckhoff Decla. ¶3, ex. 1. Joinder of all of those participants is impracticable. *Tussey*, Doc. 183 at 8–9, 2007 U.S. Dist. LEXIS 88668 at 12. That is particularly so because all of those 10,000 participants would be asserting the same claims on behalf of the Plan that the Defendants breached their fiduciary duties and would be seeking to recover the same Plan losses and fiduciary profits resulting from those breaches. 29 U.S.C. §1132(a)(2), §1109(a). For the reasons stated *infra* in Part IV, those actions on behalf of the Plan cannot be pursued separately in individual actions without resulting in inconsistent and varying adjudications that impose incompatible standards on Plan fiduciaries or without having one participant's action as a practical matter dispose of other participants' claims or impair their ability to pursue those claims. Therefore, this class satisfies Rule 23(a)(1).

**(2) Commonality.**

To satisfy Rule 23(a)(2), Plaintiffs need only show that there are questions of law or fact common to the class. "The rule does not require that every question of law or fact be common to every member of the class[.]" *Paxton*, 688 F.2d at 561. The class claims

"must depend on a common contention" and that common contention "must be of such a nature that it is capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 376 (8th Cir. 2013) (quoting *Dukes*, 131 S. Ct. at 2551). "Rule 23 is satisfied when the legal question 'linking the class members is substantially related to the resolution of the litigation.'" *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)(quoting *Paxton*, 688 F.2d at 561). That is so "even though the individuals are not identically situated" or because the alleged misconduct affected class members in different ways. *Paxton*, 688 F.2d at 561; *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999)("interests of the various plaintiffs do not have to be identical to the interests of every class member"). If the same evidence on an issue can suffice for each class member, then it is a common question. *Blades*, 400 F.3d at 566. Because an ERISA fiduciary breach action such as this is an action on behalf of the Plan regarding duties owed to the Plan as a whole, "commonality is quite likely to be satisfied[.]" *Schering*, 589 F.3d at 599 n.11; see also *Spano v. Boeing Co.*, 633 F.3d 574, 585–86 (7th Cir. 2011)(commonality exists because "participants operate against a common background").[11]

---

[11] *Spano* imposes unduly restrictive standards of typicality and adequacy for certification of ERISA fiduciary breach class actions. See *id.* at 586–88. No other circuit has adopted those standards. By imposing such restrictive standards, *Spano* contradicts Eighth Circuit precedent that the burden of proving typicality is not onerous. *Paxton*, 688 F.2d at 562. *Spano* also applies the Supreme Court's decisions in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), and *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), much more broadly than does the Eighth Circuit, which recognizes that those decisions are limited to their unique facts of a prepackaged class action settlement being presented to the court upon filing. See *Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski*, 678 F.3d 640, 646–47 (8th Cir. 2012)(quoting *Petrovic*, 200 F.3d

Here, there are numerous common contentions on which all class members' claims depend, including (without limitation): whether each defendant is a fiduciary; whether each defendant breached his or her duty or engaged in a prohibited transaction in causing the Plan to pay excessive recordkeeping fees; whether each defendant breached his or her duty in causing the Plan to invest in imprudent and conflicted proprietary investment vehicles; whether the Plan suffered losses from these breaches and how to calculate the Plan's losses; whether the defendants gained any profit from the use of Plan assets and how to calculate the profits that must be restored to the Plan; and whether each defendant is jointly and severally liable for these breaches and losses under 29 U.S.C. §1105(a). The evidence required to prove these facts are Plan-level facts and thus the same for all Plan participants and beneficiaries.

Because the Plan fiduciaries owed their duties to the Plan and acted as to the Plan as a whole, the questions of whether they breached their duties, caused losses, or gained profits, necessarily are questions that apply at the Plan level and do not depend on the circumstances of any particular participant. Therefore, nearly all of the questions of law and fact in this action are common to each class member. *Tussey*, Doc. 183 at 9–14, 2007 U.S. Dist. LEXIS 88668 at 12–20.

---

at 1145–46). *Spano*'s impermissibly restrictive standards thus do not apply in this Circuit. Moreover, DOL "depends in part on private litigation to ensure compliance" with ERISA and has previously expressed concern over the erection of unnecessarily high burdens to participant-enforcement actions under §1132(a)(2). *Braden*, 588 F.3d at 597 n.8. That further weighs against the unnecessarily restrictive class certification standards of *Spano*, particularly since ERISA specifically authorizes *any* participant to pursue an action to recover plan damages. 29 U.S.C. §1132(a)(2).

**(3) Typicality.**

Under Rule 23(a)(3), "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." "The burden of showing typicality is not an onerous one." *Paxton*, 688 F.2d at 562. "The typicality requirement as customarily applied tends to merge with 'commonality.'" *Id.* (citing *Falcon*, 457 U.S. at 158 n.13). Thus, in the Eighth Circuit, typicality is satisfied if there are "other members of the class who have the same or similar grievances as the plaintiff." *Id.* (quoting *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977)); *Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269, 1275 (8th Cir. 1990); *DeBoer*, 64 F.3d at 1174. Here all class members have the same or a similar grievance as the Plaintiffs because they are all participants in the Plan to which Defendants owed their fiduciary duties and are seeking to enforce their Plan's rights against Defendants. They all have the same interest under §1132(a)(2) in enforcing Defendants' obligation under §1109(a) to make good to the Plan all losses and profits resulting from those breaches.

Typicality "is generally considered to be satisfied 'if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory.'" *Paxton*, 688 F.2d at 561–62 (quoting C. Wright & A. Miller, Fed. Practice & Procedure § 1764 at n.21.1 (Supp. 1982)). Each class member, as a Plan participant, is asserting the same claim, which is the Plan's claim under §1109(a). All class members' claims thus are based on the same events—Defendants' breach of duties that were owed to the Plan as a whole, both in providing conflicted and imprudent investment options in the Plan and causing the Plan to pay

excessive recordkeeping expenses. The same facts are the basis of each class member's claim on behalf of the Plan. All of the class members' claims are based on the same legal and remedial theory—enforcement through §1132(a)(2) of Defendants' obligations under §1109(a) to make good to the Plan the losses resulting from Defendants' breach of duty and to restore to their Plan all profits from the use of Plan assets. Each class member would have to rely on the same evidence to prove Defendants breached their duties and harmed the Plan.

"Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). A participant's action under §1132(a)(2) is an action on behalf of the Plan to assert the Plan's rights and remedies under §1109(a). The duties owed by the defendant fiduciaries are duties owed to the Plan, and thus to all participants. 29 U.S.C. §1104(a)(1). Plaintiffs allege breaches of duty—providing imprudent investments for the benefit of Ameriprise at the cost of the Plan and causing the Plan to pay excessive recordkeeping compensation—that were directed to the Plan as a whole and not directed only to certain participants. Therefore, the Plaintiffs' claims arise from the same events and course of conduct as all class members, since they are events and a course of conduct that were directed to and affected the Plan as a whole.

Any participant's claim thus necessarily is typical of the claims of the class because that participant is asserting the Plan's claim. *Tussey*, Doc. 183 at 15–17, 2007 U.S. Dist. LEXIS 88668 at 21–23 (citing cases). Proving the breaches and the Plan's damages

entails no individualized inquiries. *Cf. Montenez*, 458 F.3d at 787 (quoting *Jones v. Takaki*, 38 F.3d 321, 323–24 (7th Cir. 1994)). "Because this lawsuit is brought on behalf of the Plan, individual participants' varying damages are irrelevant." *Tussey*, Doc. 183 at 15, 2007 U.S. Dist. LEXIS 88668 at 22. As shown *infra* in Part IV, each individual participant cannot demand her or his own formula for calculating Plan damages. Instead, there must be a single calculation of Plan damages. The recovered Plan damages will be distributed to individual participant accounts pro rata in a manner that is little more than a mechanical calculation. That different participant accounts could receive different amounts does not affect typicality. *Alpern*, 84 F.3d at 1540.

**(4) Adequacy**.

Under Rule 23(a)(4), the class representative and class counsel must "fairly and adequately protect the interests of the class." The purpose of the adequacy requirement is to ensure that there are no potential "conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625; *Tussey*, Doc. 183 at 17, 2007 U.S. Dist. LEXIS 88668 at 24–25. "The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d at 562. "The experience and capability of the representative's counsel bears upon the adequacy of the representative." *Rattray v. Woodbury County*, 614 F.3d 831, 836 (8th Cir. 2010).

**The Plaintiffs will vigorously prosecute this action.**

Here, the Plaintiffs' interests are in common with the class members' interests

because they all are acting on behalf of their Plan in seeking a declaration of Defendants'
breaches and recovering the losses and profits due the Plan. Plaintiffs have shown a
willingness and desire to vigorously prosecute this action by having already responded to
Defendants' written discovery and providing their depositions. Doc. 149-1 at 17–18
(60:24—65:7), 21 (76:18—77:22)(Olson dep.); Doc. 149-1 at 45–47 (66:7—
71:13)(Krueger dep.); Doc. 149-1 at 78–79 (74:12—78:15), 90 (122:3–18)(Bauhs dep.);
Doc. 149-1 at 106 (40:19—41:8), 108 (47:9—48:17), 109 (50:1—53:16)(Wones dep.);
Doc. 149-1 at139 (63:24—64:13), 140 (66:12—67:22, 69:5–11)(Tuckner dep.). A
plaintiff need only be "aware of the factual and procedural circumstances of their case" to
be adequate representatives; "the depth of a named representative's knowledge is
irrelevant." *In re Workers' Compensation*, 130 F.R.D. 99, 108 (D.Minn. 1990); see also
*In re Select Comfort Corp. Secs. Litig.*, 202 F.R.D. 598, 609 (D.Minn. 2001)("Class
representatives in complex cases are not required to have the detailed level of firsthand
knowledge of facts or law that defendants seek to impose."). Plaintiffs are sufficiently
aware of the factual and procedural circumstances of this case to be class representatives.

Because the Plaintiffs are pursuing claims on behalf of the Plan and not individual
losses, there is no conflict between Plaintiffs' individual interests and the interests of
class members; instead, the interests of all Plan participants are aligned. See *Dewey v.
Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012). All participants share
the same interest of maximizing the Plan's recovery.

Mere hypothetical or minor conflicts among class members are insufficient to defeat
class certification. *Johnson v. Meriter Health Servs. Employee Ret. Plan*, 702 F.3d 364,

372 (7th Cir. 2012); *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 679–80 (7th Cir. 2009);

*Dewey*, 681 F.3d at 184 (citing *Kohen*, 571 F.3d at 680). Instead, the party opposing class

certification has the burden of proving that an actual, "fundamental" or "material",

conflict exists. *Dewey*, 681 F.3d at 184 (quoting *Ward v. Dixie Nat'l Life Ins. Co.*, 595

F.3d 164, 180 (4th Cir. 2010), *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 959 (9th Cir.

2009), and others); *Johnson*, 702 F.3d at 372. There can be no such conflict here because

no Plan participant will suffer from the Plaintiffs' recovery of damages on behalf of the

Plan and only those participants affected by Ameriprise's breaches are included in the

class.

### The Plaintiffs' attorneys are recognized leaders in ERISA fiduciary breach litigation who will fairly and adequately represent the interests of the class.

Plaintiffs' attorneys are recognized as national leaders in ERISA fiduciary breach

actions. Jay Sushelsky, Senior Attorney for the AARP Foundation, declared "Schlichter,

Bogard & Denton is at the forefront of 401(k) excessive fee litigation, from when its

attorneys filed the first excessive fee case in the country, including this case in Fall of

2006." *Kanawi v. Bechtel Corp.*, No. 06-5566, Doc. 805-7 at 4 (N.D.Cal. Dec. 20, 2010).

"It can be fairly said that the firm's work has literally moved the entire investment

marketplace." *Id*. at 5. Thomas R. Theado, a national ERISA attorney and Partner at

Gary, Naegele & Theado, LLC, declared:

> To my knowledge, no one (including the Department of Labor) had brought
> suit on fiduciary-based excessive-fee claims against the plans of large
> employers prior to Mr. Schlichter. Mr. Schlichter's efforts have benefitted
> not only the thousands of participants in the Bechtel plans, but plan
> participants across the United States as well as the entire ERISA bar as his
> cases have been instrumental in shaping the emerging case law pertaining

> to claims premised on averments of faultful revenue-sharing arrangements in 401(k) retirement plans. As such, Mr. Schlichter's firm has been seen as a pioneer in the field, serving a public good as a "private attorney general."

*Kanawi*, No. 06-5566, Doc. 805-8 at 8.

Plaintiffs' attorneys have been appointed class counsel in similar actions against large corporations numerous times. *Tussey*, Doc. 183 at 23, 2007 U.S. Dist. LEXIS 88668 at 32; *Spano*, 633 F.3d at 586; *Martin v. Caterpillar, Inc.*, No. 07-1009, Doc. 173 at 4 (C.D.Ill. Apr. 21, 2010); *George v. Kraft Foods Global, Inc.*, 270 F.R.D. 355, 368 (N.D.Ill. 2010); *Loomis v. Exelon Corp.*, No. 06-4900, Doc. 86 at 7 (N.D.Ill. June 26, 2007); *In re Northrop Grumman Corp. ERISA Litig.*, No. 06-06213, Doc. 421 at 28–29 (C.D.Cal. Mar. 29, 2011); *Tibble v. Edison Int'l*, No. 07-5359, Doc. 286 at 15 (C.D.Cal. June 30, 2009); *Kanawi*, No. 06-5566, Doc. 577 at 11–12; *Taylor v. United Techs. Corp.*, No. 06-1494, Doc. 151 at 10 (D.Conn. June 30, 2008). They have obtained substantial monetary and equitable awards for other 401(k) plans. They obtained, after four weeks of trial, a judgment restoring to the ABB Inc. 401(k) plans over $35 million in losses and significant reformation of the plans. *Tussey*, Doc. 623, 2012 U.S. Dist. LEXIS 45240 (Mar. 31, 2012). In other cases they have obtained large settlements and significant plan reformation. See *Nolte v. CIGNA Corp.*, No. 07-2046, Doc. 399 (C.D.Ill. June 21, 2013)($35 million; pending court approval); *Will v. Gen. Dynamics Corp.*, No. 06-698, Doc 243-1 at 3 (S.D.Ill. Aug. 9, 2010)($15 million); *Martin*, No. 07-1009, Doc. 173 at 5

($16.5 million); *Kanawi*, No. 06-5566, Doc. 795 at 2 ($18.5 million).[12]

Plaintiffs' attorneys have further demonstrated their competence and vigor in

prosecuting this case by successfully arguing against Defendants' motions and pursuing

discovery to date. From this it is evident that Plaintiffs and their attorneys "will

vigorously pursue the interests of the class members[.]" *Rattray*, 614 F.3d at 836. The

experience and capability of Plaintiffs' attorneys significantly "bears upon the adequacy"

of Plaintiffs as class representatives. *Id.* Plaintiffs thus should be appointed as

representatives of this class and their attorneys should be appointed class counsel under

Rule 23(g).

**IV.     Plaintiffs' action should be certified under Rule 23(b)(1)(A) and (B).**

Rule 23(b)(1) authorizes the Court to certify a class action if Rule 23(a) is satisfied

and if

> (1) prosecuting separate actions by or against individual class members
> would create a risk of:
>     (A) inconsistent or varying adjudications with respect to individual class
> members that would establish incompatible standards of conduct for the
> party opposing the class; or
>     (B) adjudications with respect to individual class members that, as a
> practical matter, would be dispositive of the interests of the other
> members not parties to the individual adjudications or would substantially
> impair or impede their ability to protect their interests[.]

Both parts of Rule 23(b)(1) are satisfied here.

**A.** "Rule 23(b)(1)(A) 'takes in cases where the party is obligated by law to treat the

members of the class alike[.]'" *Amchem* 521 U.S. at 614; see also *Ortiz*, 527 U.S. at 833.

---

[12] The same attorneys representing the participants in International Paper Co.'s 401(k) plans
have just filed a joint motion for court approval of another settlement ($30 million and plan
reformation). *Beesley v Int'l Paper Co.*, No. 06-703, Docs. 529–30 (S.D.Ill. Oct. 1, 2013).

"One person may have rights against, or be under duties toward, numerous persons constituting a class, and be so positioned that conflicting or varying adjudications in lawsuits with individual members of the class might establish incompatible standards to govern his conduct." Fed.R.Civ.P. 23, Adv. Comm. Note, 1966 amend., sub. (b)(1)(A). The assets of a 401(k) plan are held in a single trust for the benefit of all participants. 29 U.S.C. §1103(a). ERISA's fiduciary duties are owed to the Plan and not to individual participants. 29 U.S.C. §1104(a)(1)("shall discharge his duties *with respect to a plan*"; emphasis added). Therefore, Defendants owed fiduciary duties to *all* participants in the Plan, and hence all class members. In discharging their duties to the Plan, Defendants were obligated to treat all participants (hence all class members) alike.

Allowing over 10,000 individual class members to pursue §1132(a)(2) actions on behalf of the Plan over the alleged recordkeeping fees and imprudent funds claims could result in varying adjudications over whether Defendants breached their duties as to the those claims, which Defendants are liable for those breaches, and how to measure the Plan's damages for those breaches. For instance, for the recordkeeping fees claims the Court will have to determine Plan losses by deciding—with the assistance of expert testimony and other evidence—what was a reasonable recordkeeping fee for the Plan and how much the Plan in fact paid for recordkeeping through revenue sharing and other sources. Separate individual adjudications as to those elements will establish incompatible standards for Defendants in terms of how much in losses and/or profits they must restore to the Plan under §1109(a). In addition, one court could order Defendants to engage in competitive bidding for Plan recordkeeping services, see *Tussey*, and another

court could hold Defendants are not obligated to engage in competitive bidding. One court could hold that Ameriprise must restore to the Plan all profits gained from its sale of its recordkeeping business to Wachovia, and another court could rule nothing or a different amount must be restored. One court could rule all of the proprietary funds were imprudent and measure Plan losses by comparison to one set of alternatives; another court could find only some or none were imprudent or measure losses by a different standard. One court could order the remaining funds be removed and another court could find them to be prudent. One court could order the removal of all Defendants as Plan fiduciaries and another court could rule the Defendants may remain as fiduciaries.

**B.** In a similar manner, one participant's §1132(a)(2) action could effectively dispose of the other participants' actions on behalf of the Plan. Although there would be no res judicata effect against absent participants from one participant's action (see, e.g., *Smith v. Bayer Corp.*, 564 U.S. ___, 131 S.Ct. 2368, 2379–81 (2011)), as a "practical matter" a prior adjudication will at least influence a subsequent court's adjudication of the same claims. Actions "which charge[ ] a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or beneficiaries, and which requires an accounting or like measures to restore the subject of the trust" are typical Rule 23(b)(1)(B) actions. Fed.R.Civ.P. 23, Adv. Comm. Note, 1966 amend., sub. (b)(1)(B).

Because of the trust-like nature of a defined contribution plan, with fiduciary duties owed to the plan and not to individual participants, numerous courts have found similar claims to be paradigmatic Rule 23(b)(1) class actions. *Schering*, 589 F.3d at 604 ("In

light of the derivative nature of ERISA §[1132(a)(2)] claims, breach of fiduciary duty claims brought under§[1132(a)(2)] are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held."); *Tussey*, Doc. 183 at 18–19, 2007 U.S. Dist. LEXIS 88668 at 25–27; *Piazza v. EBSCO Indus. Inc.*, 273 F.3d 1341, 1352–53 (11th Cir. 2001); *Jones v. NovaStar Fin. Inc.*, 257 F.R.D. 181, 193–94 (W.D.Mo. 2009); *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111–12 (N.D.Cal. 2008). Equally, this case is a paradigmatic class action certifiable under both parts of Rule 23(b)(1).

## CONCLUSION

The Court should certify all of Plaintiffs' claims as a class action under Federal Rule of Civil Procedure 23(b)(1) for the following class:

> All current and former participants and beneficiaries of the Ameriprise 401(k) Plan who were affected by the breach of fiduciary duties alleged in Plaintiffs' complaint, excluding those individuals who breached their fiduciary duties as alleged in Plaintiffs' complaint.

The Court should appoint as class representatives Plaintiffs Roger Krueger, Jeffrey Olson, Deborah Tuckner, Susan Wones, and Margene Bauhs and should appoint as class counsel Schlichter, Bogard & Denton LLP.

Respectfully submitted,

DATE: October 1, 2013          s/ Michael A. Wolff
Jerome J. Schlichter (admitted *pro hac vice*)
Michael A. Wolff (admitted *pro hac vice*)
Mark G. Boyko (admitted *pro hac vice*)
Troy A. Doles (admitted *pro hac vice*)
Heather Lea (admitted *pro hac vice*)
Schlichter Bogard & Denton LLP
100 South Forth Street, Suite 900
St. Louis, MO, 63102
(314) 621-6115
(314) 621-7151 (fax)
jschlichter@uselaws.com
mwolff@uselaws.com
mboyko@uselaws.com
tdoles@uselaws.com
hlea@uselaws.com

*Lead Counsel for Plaintiffs*

Thomas W. Pahl (#243012)
Thomas A. Harder (#158987)
250 Marquette Avenue, Suite 1200
Minneapolis, MN 55401
(612) 338-8788
(612) 338-8690 (fax)
tpahl@foleymansfield.com
tharder@foleymansfield.com

*Local Counsel for Plaintiffs*

01515882.DOCX; 1