IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| ROGER KRUEGER, et al., | |
| *Plaintiffs*, | |
| v. | No. 11-CV-02781 (SRN/JSM) |
| AMERIPRISE FINANCIAL, INC., et al., | |
| *Defendants*. | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO
MAGISTRATE JUDGE'S ORDER
ON THE REDESIGNATION AND UNSEALING OF DOCUMENTS**

Pursuant to Local Rule 72.2(b)(2), defendants submit this Response to plaintiffs' Objections to Magistrate Judge Mayeron's Order on plaintiffs' Motion to Redesignate and Unseal Documents. (*See* Dkt. 506 (the "Order").) For the following reasons, the Court should affirm Judge Mayeron's Order in full.

## INTRODUCTION

This is not a motion to compel production, or a privilege dispute. Instead, plaintiffs challenge Judge Mayeron's ruling that 53 documents that have been produced to plaintiffs in discovery—documents which the Court *has not* relied upon in any ruling on the merits—have been appropriately designated confidential under the governing Amended Protective Order because they contain commercially sensitive information. (Dkt. 114.) Plaintiffs and their experts have had full access to all of the documents at issue. Nor are plaintiffs prohibited from using the documents in future filings or at trial. Indeed, Judge Mayeron explicitly declined to rule on whether the documents would

remain confidential in other settings. Still, plaintiffs seek to reverse virtually every instance in Judge Mayeron's 60-page order where the Court upheld defendants' confidentiality designations.[1] But plaintiffs have failed to establish that Judge Mayeron's thorough analysis is "clearly erroneous or contrary to law." Judge Mayeron correctly found that because the documents plaintiffs now challenge played no role in any decision on the merits, they do not constitute judicial records to which the presumption of public access attaches. And even if they did, Judge Mayeron separately concluded (correctly) that Ameriprise or the third parties who produced them had established "compelling reasons" for maintaining the documents' confidentiality. (Order at 60). Plaintiffs' objections should be rejected.

At issue here are documents that contain sensitive and proprietary business information, including confidential payment rates. For example, the documents that Judge Mayeron found to be entitled to protection under Rule 26(c), and that plaintiffs now challenge, reflect:

- Fees schedules and payment rates in contracts entered into by Ameriprise on behalf of the Plan with the Plan's various service providers;

---

[1] Judge Mayeron determined that a handful of documents defendants had filed under seal should be made public, in whole or in part. Defendants have not objected to Judge Mayeron's rulings on these documents and have complied with the Order and refiled unsealed versions. (*See, e.g.*, Dkts. 523, 524.) Those materials are no longer at issue, except to the extent plaintiffs challenge Judge Mayeron's determination that certain portions of them should be redacted.

- Committee meeting materials that assess and analyze a variety of financial services products, including the fees associated with those products, offered both by Ameriprise and its competitors;

- Independent fiduciary and consultant reports, which Ameriprise expended significant resources in obtaining, reflecting analyses of Ameriprise's 401(k) Plan, the services provided by the Plan's recordkeeper, and the fees associated with those services; and

- Internal communications by senior executives in Ameriprise's asset management business containing candid evaluations of Ameriprise's financial products as well as those of its competitors.

Plaintiffs' principal argument in seeking reversal of Judge Mayeron's confidentiality ruling is a novel one which finds no support in a single reported decision. Specifically, plaintiffs argue that ERISA's duty of loyalty, *i.e.*, the requirement that fiduciaries of a 401(k) plan act solely in the interest of plan participants and beneficiaries, destroys any notion of confidentiality and requires the wholesale public disclosure of materials provided to the fiduciaries by sponsors, third-party service providers, or by the fiduciaries themselves. Plaintiffs do not offer a single ERISA (or other) case that supports this result. And such a rule is illogical, because it would uniquely disadvantage ERISA plans. As Judge Mayeron observed, "fiduciary committees should not only be encouraged to have full and frank discussions . . . but to memorialize their deliberations with sufficient detail to assist them in future decisionmaking." (Order at 44 n.20.) If plan fiduciaries and others are deterred from providing information to plans and candidly assessing plan issues, plans and their participants suffer.

Moreover, though plaintiffs suggest that Ameriprise business persons who serve as fiduciaries must choose between loyalty to the Plan and protecting Ameriprise's

confidential information (and that of other Plan service providers), no such conflict is evident. Plaintiffs do not show how restricting *the public's* access to a limited pool of discovery documents prevents the fiduciaries from carrying out Plan administration, or implicates the fiduciaries' duties in any way. Finally, plaintiffs do not show why this Court should adopt their unsubstantiated views of the competitive consequences of publicly disclosing the information at issue over those of the party and third-party declarants (upon whom Judge Mayeron relied), who have described in sworn affidavits how public disclosure would compromise their business interests. Plaintiffs' failure in this regard is particularly acute in light of the deferential standard this Court must apply to Judge Mayeron's ruling.

### STANDARD OF REVIEW

Plaintiffs present the Court with two standards of review. First, plaintiffs admit, as they must, that a district court does not set aside a magistrate's rulings unless they are "clearly erroneous or … contrary to law." *See* Fed. R. Civ. P. 72(a); *see also* L.R. 72.2(a)(3); (Objections at 2). But then plaintiffs offer a two-page exposition of supposed "Standards for Confidentiality and Sealing of Documents," (Objections at 2– 4), leaving the misimpression that the Court must engage in a searching de novo review of Judge Mayeron's findings supporting confidentiality and sealing before it can affirm the Order.

Not so. "The standard of review applicable to an appeal of a magistrate judge's order on a nondispositive issue is extremely deferential." *Dochniak v. Dominium Mgmt. Servs., Inc.*, 240 F.R.D. 451, 452 (D. Minn. 2006) (quotation omitted) (affirming magistrate's denial of motion to compel discovery); *Reko v. Creative Promotions, Inc.*,

70 F. Supp. 2d 1005, 1007 (D. Minn. 1999) ("The district court *must* affirm an order by a magistrate judge unless it is 'clearly erroneous or contrary to law.'") (emphasis added). As one Eighth Circuit district court vividly observed, to be "clearly erroneous," a magistrate's order must strike the reviewing court not as possibly or even probably wrong, but "as wrong with the force of a five-week-old, unrefrigerated dead fish." *EFCO Corp. v. MIG Corp.*, 2007 WL 4644706, at *7 (S.D. Iowa Dec. 12, 2007) (quotations omitted). To be "contrary to law," a magistrate's order must have failed to apply, or have misapplied, the relevant statutes, caselaw, or procedural rules. *Id.* (citations omitted). Plaintiffs do not make either showing here.

Second, plaintiffs' lengthy discussion of the legal standard for confidentiality is largely irrelevant, because it focuses on "judicial records." (*See* Objections at 3.) Judge Mayeron correctly found that only documents related to and "integrally involved" in orders on the merits constitute judicial records. (*See, e.g.*, Order at 21). Plaintiffs do not argue that any of the documents were integral to dispositive motions. *See EEOC v. GMT, LLC*, 2012 WL 2871789, *3 (D. Neb. Jul. 12, 2012) ("[s]imply filing a document with the court does not convert it to a 'judicial document'") (citations omitted). In any event, Judge Mayeron went on to find that, even if the documents did amount to judicial records to which the presumption of public access attaches, Ameriprise or third parties had met the higher confidentiality standard. However, this Court need only agree that the lower standard has been met to affirm Judge Mayeron's decision.

## ARGUMENT

**I.    JUDGE MAYERON CORRECTLY FOUND THAT AMERIPRISE—AND THIRD PARTIES—HAVE LEGITIMATE CONFIDENTIALITY INTERESTS THAT MERIT PROTECTION UNDER RULE 26(C).**

Plaintiffs' challenge to Judge Mayeron's Order boils down to the claim that because the documents at issue concern an ERISA plan to which the duty of loyalty applies, defendants and non-party service providers have lost or waived any claim to the confidentiality protections afforded under Rule 26(c).  (*See, e.g.*, Objections at 2 ("Ameriprise and those companies have no lawful interest in keeping *Plan* information secret . . .") (emphasis in original).)  As a threshold matter, if plaintiffs' theory that all competitively sensitive business information must be publicly disclosed if it relates to a plan were correct, there would be little purpose for a protective order in the first place.  But when a court enters a protective order, "it has, at least implicitly, recognized that unrestricted disclosure of the protected materials could 'unduly harm' the parties who are subject to the terms of that Order."  *Cordis Corp. v. SciMed Life Sys., Inc.*, 177 F.R.D. 651, 654 (D. Minn. 1997) (*citing Iowa Beef Processors, Inc. v. Bagley*, 601 F.2d 949, 954 (8th Cir. 1979)).

More specifically, nothing in ERISA requires the disclosure of all plan-related information to plan participants, ***let alone the public at large***.  Rather, ERISA contains detailed provisions specifying the information and materials that must be provided to participants upon request.  *See, e.g.*, ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4).  Given that statutory scheme, courts have been reluctant to expand on its requirements.  *See, e.g.*,

6

*Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) ("ERISA already has an elaborate scheme in place for enabling beneficiaries to learn their rights and obligations . . ."). This Court should be similarly skeptical of plaintiffs' attempt to create a broad new disclosure requirement.

Indeed, the rule plaintiffs propose would uniquely disadvantage ERISA plans. If a plan's fiduciaries cannot deliberate freely and fully, plan administration suffers.[2] If third-party providers and consultants know that the proprietary databases, models, and methods they offer paying clients will be available to their competitors and the rest of the public for free, they will either charge more, limit the information they provide, or decline to work with ERISA plans at all, thereby reducing the quantity and quality of information available to plans. This is exactly why Judge Mayeron ruled that publicly revealing documents from the Plan's investment consultant, DeMarche, that reflect its confidential analyses, working methods and processes, "could harm its business by disclosing to its competitors how it conducts its analysis and research, and its conclusions." (*See* Order at 32.)

---

[2] Plaintiffs assert that "ERISA plan fiduciaries routinely publish their committee minutes and their reports." (Objections at 5.) The passage in their earlier briefing that they point to as support describes "[state] government-sponsored retirement plans," which are not ERISA plans, and, which, as governmental entities, are subject to public disclosure and accountability regimes wholly inapplicable to private-sector plans. (*See* Dkt. 374 at 4 n.6.) *See, e.g.*, Teacher Ret. Sys. of Tx, Public Info. Act and Policy, *available at* http://www.trs.state. tx.us/about/documents/public_info_act_and_ policy.pdf (describing the public disclosure regime applicable to the Texas Teacher Retirement System, one of plaintiffs' examples). Judge Mayeron thoroughly explained how the cases plaintiffs cite for this proposition are inapplicable. (Order at 8, 44.)

The same is true with respect to fees and pricing terms, such as those reflected in the Plan's service provider agreements. If a plan's pricing terms are public, the plan's bargaining position *vis-a-via* other service providers suffers. *See Cardiac Pacemakers, Inc. v. Aspen II Holding Co.*, 2006 WL 3079410, at *4-8 (D. Minn. Oct. 24, 2006) (maintaining under seal certain documents reflecting prices and negotiating history upon party's representation that disclosure of such material "would undermine [its] negotiating ability in current and future contract negotiations"). Again, this is why Judge Mayeron ruled that publicly disclosing fee information contained in the Plan's recordkeeping contracts "would have a significant impact on Ameriprise's relationships with current and future service providers" and would cause harm to Wells Fargo "if the information is published and got into the hands of its competitors for the recordkeeping business and other customers of Wells Fargo." (*See* Order at 29-30.)

Oddly, given their role as the Plan participants' putative champions, plaintiffs disavow the Plan's own interest in confidentiality. (*See* Objections at 2.) Plaintiffs say that Judge Mayeron rejected the argument that **the Plan** would be harmed by the release of its fiduciaries' confidential materials. (*See* Objections at 2.) This is incorrect.[3] Judge Mayeron did not differentiate between the various Ameriprise defendants and the Plan, consistently referring to "Ameriprise" when discussing documents that Ameriprise the

---

[3] Plaintiffs misconstrue a footnote in which Judge Mayeron observed that "[o]ne could argue" that exposing fiduciary committee minutes might have a chilling effect only on what a committee writes down, as opposed to what it discusses—but went on to find that "that position takes on a myopic view of the real world." (Order at 43-44 n. 20.)

corporation, the fiduciary committee defendants, and the Plan would all have an interest in keeping confidential.  (*See, e.g*., Order at 43 ("[The] Court finds that Ameriprise had good cause to designate [committee minutes and related materials] because the documents reflect Ameriprise's confidential business information.")  But Judge Mayeron's analysis, including her discussion of the impact public disclosure would have on Ameriprise's negotiating position (*see* Order at 29-30), makes clear she is recognizing the Plan's interest in negotiating the best terms it can.  Regardless, even if Judge Mayeron's ruling was based solely on Ameriprise's corporate confidentiality interests, it does not matter, because plaintiffs cannot show that ERISA demands that plan sponsors give up all confidentiality on matters that touch on a plan (a rule that would certainly make a company think twice before offering a retirement plan).  That is why Judge Mayeron found, for example, that disclosing "Truscott's candid evaluations" concerning both Ameriprise funds and nonproprietary funds "could clearly jeopardize" Ameriprise's business.  (Order at 52.)

   Finally, plaintiffs manufacture a false conflict between a fiduciary's duty to loyally manage the plan, and an executive's duty to maintain business confidences.  (*See* Objections at 4.)  Plaintiffs do not explain how declining to share either the Plan or the Plan sponsor's confidential information with the public impedes the fiduciaries' ability to deal loyally with the Plan and its assets.  No such explanation is imaginable.  Ameriprise's interest in keeping candid discussions of its own products confidential in no way inhibits, and in fact encourages, the Plan fiduciaries' candid, thorough, discussions.  (See Order at 43-44 n.20 (fiduciary committees should be encouraged "to have full and

frank discussions concerning the tasks assigned to them").)  This is important, for so long as the fiduciaries' decisions are made in the Plan's best interests, incidental benefits to the plan sponsor or the fiduciary are not inconsistent with the duty of loyalty.  *See, e.g., Metzler v. Graham*, 112 F.3d 207, 213 (5th Cir. 1997); *Tibble v. Edison Int'l*, 2010 WL 2757153, at *19 (C.D. Cal. July 8, 2010).

Plaintiffs' logic appears loosely modeled on the so-called "fiduciary exception" to the attorney-client privilege, a judicially-created doctrine that bars ERISA plan fiduciaries from asserting the attorney-client privilege against plan beneficiaries with respect to communications with lawyers over matters of trust administration.  But that doctrine, when it applies, requires fiduciary communications with counsel to be shared with **Plan participants and beneficiaries**.  *See, e.g., Buzzanga v. Life Ins. Co. of N. Am.*, 2010 U.S. Dist. LEXIS 33089 (E.D. Mo. Apr. 5, 2010).  It does not require that those privileged communications be disclosed to the general public.  Here, of course, the challenged documents are already available to plaintiffs' counsel and the named plaintiffs themselves.

## II. JUDGE MAYERON CORRECTLY FOUND COMPELLING REASONS FOR PROTECTING CONFIDENTIAL INFORMATION.

Plaintiffs argue that Ameriprise and the third parties whose documents are at issue have failed to demonstrate any actual harm they would suffer from disclosure.  (*See, e.g.*, Objections at 2, 5.)  Ameriprise, and three of its service providers, submitted declarations

or statements supporting their confidentiality claims.[4] Judge Mayeron reviewed and relied upon portions of these statements, and conducted an *in camera* review of all of the documents. She concluded that "Ameriprise has established good cause for limiting access to the documents under Rule 26(c)(1)(G)" and, to the extent it was required "to establish compelling reasons to seal or redact documents that constitute judicial records, it did so." (Order at 60.)[5] By asking this Court to substitute its review of the declarations and documents for Judge Mayeron's, plaintiffs upend the deferential standard of review the Federal and Local Rules mandate.

More specifically, plaintiffs suggest that the declarations defendants submitted in their earlier briefing were conclusory or lacked sufficient detail to support confidentiality under Rule 26(c)(1), implying that the stakeholders made blanket assertions of

---

[4] Defendants offered declarations from Brent Sabin, an Ameriprise benefits employee (Dkt. No. 368); Richard L. Fogel of TPI, a firm that had provided administrative consulting to the Plan (Dkt. No. 369); and William Miskell of DeMarche Associates, the Plan's investment consultant. (Dkt. No. 370.) Wells Fargo, the Plan's current recordkeeper and successor to Wachovia, a previous recordkeeper, intervened in the case and submitted a memorandum and other documents in support of confidential treatment for some of the information it produced in the case. (*See, e.g.*, Dkt, 377.)

[5] Judge Mayeron concluded that not only Ameriprise, but the third parties, had good cause for confidential treatment. (*See, e.g.*, Order at 32-33 (finding that documents concerning DeMarche Associates reflected "highly confidential analysis, working methods and processes" that "if publicly available, could harm its business by disclosing to its competitors how it conducts its analysis and research" and "could compromise DeMarche's business relationships with asset managers, and as it does not share any of its client presentations with other clients, it could impact whether clients would use DeMarche in the future.").)

confidentiality that Judge Mayeron credited in full. (*See, e.g*., Objections at 5-6, 8.) But Judge Mayeron weighed each statement concerning specific documents individually (in some cases, line by line), crediting most statements but not others. (*Compare* Order at 29-31 (analyzing Ameriprise declaration and a letter to the Court from Wells Fargo, and determining that information concerning other recordkeeping clients could harm Wells Fargo if made available to its competitors, and ordering redactions ) *with* Order at 38 (determining that only certain portions of a consultant's report merited confidential treatment because "Sabin's statements of the harm to Ameriprise resulting from disclosure of anything other than the pages noted above … did not support a conclusion that the entire document should remain under seal.").)

Plaintiffs also argue that much of the information defendants and the third parties seek to protect is stale, despite Judge Mayeron's analysis and conclusion that even information that is several years old is still sensitive, where, for example, it would reveal methods of analysis. (*See, e.g*., Order at 33 ("[D]espite the age of some of the documents, the Court agrees that revelation of [their] contents … could jeopardize Demarche's relationships with asset managers and future clients, and could provide information to competitors that these competitors could not obtain in the ordinary course of business.")[6] *See also Tavoulareas v. Washington Post Co*., 111 F.R.D. 653, 661

---

[6] Plaintiffs misleadingly suggest that DeMarche failed to designate its documents as confidential. (Objections at 8.) While DeMarche neglected to designate its initial production, plaintiffs should be well aware that DeMarche corrected this oversight, as the

(D.D.C. 1986) (noting that, if staleness were a valid challenge to confidentiality, otherwise valid protective orders would always be subject to challenge due to passage of time).

Nor do plaintiffs show that Judge Mayeron ignored or misapplied the relevant law. To the contrary, plaintiffs rely upon a group of dissimilar cases that are almost wholly inapplicable to their claims. For example, plaintiffs continue to rely upon case law mandating disclosure of judicial records—(*see* Objections at 6, *citing Rohrbough v. Hall*, 2010 U.S. Dist. LEXIS 49314 (E.D. Mo. May 19, 2010))—despite Judge Mayeron's findings that the documents were not such records. Nor is this a case where Judge Mayeron accepted the wholesale designation of lengthy portions of the record, without particularized analysis. (*Cf Edeh v. Equifax Info. Servs,. LLC*, 2013 U.S. Dist. LEXIS 81095, *10 (D. Minn. June 10, 2013) (Mayeron, M.J.) (rejecting as conclusory blanket assertion of confidentiality over 17 deposition transcripts).) Rather, she conducted the in camera review endorsed in *Healey v. I-Flow LLC*. *See* 282 F.R.D. 211, 214 (D. Minn. 2012) (*cited at* Objections at 7, and observing that court should "conduct a limited in camera review of documents alleged to contain trade secrets and other proprietary information").) Indeed, it is plaintiffs who make a blanket claim concerning virtually every document Judge Mayeron ordered sealed (in whole or in part), without offering even the protections for sensitive information their own authorities suggest. (*See, e.g.*,

---

protective order permits, more than a year ago. (*See* Ex. A, August 13, 2013, letter from counsel for DeMarche to plaintiffs' counsel).

13

*Tinman v. Blue Cross & Blue Shield*, 176 F.Supp.2d 743, 745-46 (E.D. Mich. 2001) (finding that documents did not merit wholesale designation, but ordering the clerk's office to keep the challenged documents in a separate file, to be made available to the public on a limited basis and only after notifying the concerned party) *cited at* Objections at 4).)

## CONCLUSION

For the reasons stated above, the Court should affirm Judge Mayeron's Order in full.

Dated: November 12, 2014     s/ Benjamin G. Bradshaw

Benjamin G. Bradshaw (admitted *pro hac vice*)
bbradshaw@omm.com
Shannon Barrett (admitted *pro hac vice*)
sbarrett@omm.com
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
(202) 383-5300

Stephen P. Lucke (#154210)
lucke.steve@dorsey.com
Kirsten E. Schubert (#388396)
schubert.kirsten@dorsey.com
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
(612) 340-2600

*Attorneys for Defendants
Ameriprise Financial, Inc. et al.*