IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

ROGER KRUEGER, et al.,

*Plaintiffs*,

v.                                                        No. 11-CV-02781 (SRN/JSM)

AMERIPRISE FINANCIAL, INC., et al.,

*Defendants*.

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS FOR NAMED PLAINTIFFS

The settlement in this case provides an exceptional result for the class. The $27.5 million settlement fund will return significant money to employees and retirees of Ameriprise Financial. It also ensures that class members will have a high-quality 401(k) plan for years to come, because the settlement includes significant affirmative relief. A conservative estimate of the improvements to the Plan as a result of Class Counsel's efforts in this case, apart from the monetary recovery, exceeds $30 million. In order to achieve this important and substantial relief for the class, Class Counsel incurred immense risk, and massive costs in time and expense, litigating the case without compensation for years—including nearly 28,000 hours of attorney time and $782,209.69 in advanced costs, carried for years —with no guarantee of payment.

Under the "common fund" doctrine, in a case such as this where class counsel obtains a recovery for the benefit of a class, class counsel is entitled to an award of reasonable attorneys' fees from the settlement proceeds. Fed.R.Civ.P. 23(h); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "Courts utilize two main approaches to

analyzing a request for attorney fees"—the "lodestar" approach or the "percentage of the benefit" approach. *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244 (8th Cir. 1996). "It is within the discretion of the district court to choose which method to apply." *Id*. at 246. However, in common fund cases, the percentage of the benefit approach is generally recommended. *Id*. at 245; see also *Koenig v. U.S. Bank N.A.*, 291 F.3d 1035, 1038 (8th Cir. 2002). In such cases, the benefit should be "based on both the monetary and the non-monetary value of the settlement." *Beesley v. Int'l Paper Co.*, No. 06-703, 2014 U.S.Dist.LEXIS 12037 at 5 (S.D.Ill. Jan. 31, 2014)(citing MANUAL FOR COMPLEX LITIGATION (Fourth) §21.71 (2004)); *Principles of the Law of Aggregate Litigation*, A.L.I., §3.13(b)("a percent-of-the-fund approach should be the method utilized in most common-fund cases, with the percentage being based on both the monetary and the nonmonetary value of the settlement."); cf. *Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989)(cautioning against an "undesirable emphasis" on monetary "damages" that might "shortchange efforts to seek effective injunctive or declaratory relief").

Here, before even considering the value of the non-monetary relief, an award of one-third of the monetary recovery, given the undersigned firm's well-documented, pioneering role in this area of litigation, would be reasonable. It is also the amount agreed to by each of the named plaintiffs at the outset of the litigation. Declaration of Jerome Schlichter ("Schlichter Decl.") ¶24. But because the non-monetary relief has real and substantial economic value to class members, Class Counsel's requested fee is actually far lower than one-third of the total value of the settlement. Moreover, as described below, while the Court is not required to evaluate the requested fee under the "lodestar"

method, Class Counsel's requested fee is actually much less than would be appropriate under the lodestar method. Accordingly, for the reasons further explained in Part IIA, the Court should award Class Counsel a fee of $9,166,666 (one-third of the monetary recovery). In addition, for the reasons explained in Parts IIB and IIC, respectively, the Court should award from the common fund reimbursement of the costs and expenses Class Counsel have incurred in litigating this matter and an incentive award to each named plaintiff of $25,000 for their service in this case.

## I.     Background and Procedural History

For nearly a year before filing the case, Class Counsel spent hundreds of hours conducting a thorough investigation of the legal and factual issues in this case by obtaining and reviewing documents and financial statements regarding the Ameriprise Financial 401(k) Plan, extensively discussing the issues with experts in the field and participants in the Plan, and analyzing and developing the Plan's potential claims.

Plaintiffs filed this action on September 28, 2011. The Plaintiffs alleged that Defendants were fiduciaries of the Plan and that Defendants engaged in breaches of fiduciary duty under 29 U.S.C. §1104(a), and prohibited transactions under 29 U.S.C. §1106(a) and (b), although the prohibited transaction claims were dismissed based on a statute of limitations argument. Doc. 323. In particular, Plaintiffs alleged that Defendants breached their fiduciary duty to ensure that the fees and expenses paid out of the assets of the Plan were reasonable and that the Plan's fiduciaries breached their duties of prudence and loyalty by selecting and retaining imprudent proprietary investment options.

After commencing the action and throughout its duration, Class Counsel expended all resources necessary to vigorously and effectively prosecute the case. At the outset, Plaintiffs' counsel opposed Ameriprise's motions to dismiss (Docs. 10, 38 and 57), which the Court granted in part and denied in part on November 12, 2012. Doc. 67.

Once discovery commenced, Plaintiffs' counsel obtained, reviewed, and analyzed a massive number of documents — over two million pages — related to the Plan and Ameriprise's investment management and retirement services companies, uncovering evidence of what Plaintiffs contended was disloyal and imprudent management of the Plan's assets. Over thirty-five depositions were conducted as part of this analysis by Plaintiffs. See Schlichter Decl. ¶21.

Plaintiffs filed their motion for class certification on October 1, 2013, which Defendants opposed. Docs. 215, 217, 230, 244. The Court granted class certification, with a modified class definition on May 23, 2014. Doc. 384. The motion practice in this case also included two motions for summary judgment. Docs. 147, 509. Defendants' first motion for summary judgment was granted in part and denied in part. Doc. 323. Defendants' second motion for summary judgment (Doc. 509) was pending at the time of the settlement.

Expert discovery also was extensive. After conducting a nationwide search, Plaintiffs' counsel identified and designated three highly-qualified experts with vast industry experience in areas such as investment management, retirement plan administration, and prudent fiduciary practices. Defendants also designated three experts, each of whom

opined that Defendants had complied with their ERISA fiduciary obligations in all respects.

At multiple points in the litigation, the parties explored a potential settlement, including a session with a private mediator. Ultimately, after more than 15 hours of negotiations with Magistrate Judge Mayeron, the parties reached a provisional agreement as to monetary relief on February 18, 2015. However, Class Counsel also insisted that the settlement include meaningful affirmative relief to ensure that the class members would have a high-quality plan in the future. Intense negotiations over those terms continued for weeks. On March 26, 2015, less than one month before the scheduled trial date, the parties reached a resolution and signed the Settlement Agreement. Doc. 597-1. The Court granted preliminary approval of the settlement on April 6, 2015. Doc. 604. In accordance with the Court's order, notices to class members are scheduled to be mailed on May 14, 2015.

From this history it is clear that Class Counsel vigorously pursued the class's claims, and did not lightly agree to the proposed settlement. Even when the substantial monetary recovery of $27.5 million was agreed upon, Class Counsel still insisted upon obtaining significant additional affirmative relief, and were fully prepared to go to trial if Defendants did not agree to that non-monetary relief.

**II.     Argument**

Class Counsel is entitled to a reasonable fee award from the common fund. One-third of the monetary portion of the recovery is reasonable. Considering the value of the

affirmative relief, as is proper, Class Counsel's fee request is actually much less than one-third of the value of the settlement.

In particular, the cash portion will be tax deferred for active Plan participants and those former participants who elect to put it into an IRA. This tax deferral increases the actual value of the cash by 18.6%, which amounts to $5,115,000, so that the value of the monetary portion is $32,615,000. See *infra*. When the discounted value of the non-monetary relief is included, $30,683,564, the settlement value, *before* the value of tax deferral, is estimated to be worth $58,183,564. See Declaration of Stewart Brown ("Brown Decl.") ¶8. The total value of the settlement, including non-monetary relief and the tax deferred cash, is $63,298,564.  Thus, the requested fee is less than 14.5% of the total settlement value. The reasonableness of the fee request is further shown by the enormous risk of nonpayment and excellent result for the class. Class Counsel pursued these untested legal theories through years of litigation and to the brink of trial against a formidable opponent with substantial defenses, yet obtained a very significant result for the class.

Moreover, a lodestar cross-check analysis confirms that Class Counsel's requested fee is not only reasonable, but is significantly less than even a lodestar fee, even without ***any*** multiplier for the tremendous risk incurred. Class Counsel devoted almost 28,000 hours of attorney time to pursuing these claims while facing a significant risk of non-recovery. Substantial additional hours will be devoted in the future, and Class Counsel have also taken on the risk of the settlement not succeeding. Further, Class Counsel have committed to monitor compliance with the settlement terms for the three-year term and to

enforce the settlement without charge to the class if that becomes necessary. The Court should also award reimbursement of Class Counsel's reasonable and necessary costs incurred in pursuing these claims, which have been carried for many years, again at a substantial risk of non-recovery. The Court should also approve incentive awards to the named plaintiffs for their service in this case.

### A.  Plaintiffs' attorneys' fees

Although the "Eighth Circuit has not laid out factors that a district court must consider when determining whether a percentage of the common fund is reasonable…[d]ecisions from this Court have relied on factors set forth by other Circuits, including the Third and Fifth Circuits." *Yarrington v. Solvay Pharms., Inc*. 697 F.Supp.2d 1057, 1061–62 (D.Minn. 2010)(citing *Carlson v. C.H. Robinson Worldwide, Inc*., No. 02-3780, 2006 U.S.Dist.LEXIS 67108 at 20 (D.Minn. Sept. 18, 2006)). In *Yarrington*, this Court considered seven factors: (1) the benefit conferred on the class; (2) the risk to which plaintiffs' counsel was exposed; (3) the difficulty and novelty of the legal and factual issues of the case; (4) the skill of the lawyers, both plaintiffs' and defendants'; (5) the time and labor involved; (6) the reaction of the class; and (7) the comparison between the requested attorney fee percentage and percentages awarded in similar cases. *Id*. at 1062. As explained in detail below, all of these factors support Plaintiffs' request.

### 1.  Class Counsel conferred a very significant benefit on the class.

The $27.5 million monetary recovery is significant for the class, estimated at 46,200 participants, and for this novel area of litigation. Adding additional value, the settlement provides for current participants to receive their distributions directly into their Plan

account tax deferred and gives former participants the right to direct their distribution into a tax-deferred vehicle, such as an IRA. The Investment Company Institute estimates that the benefit of tax deferral for 20 years is an additional 18.6%, so that the actual value to the class for the monetary part of the settlement is $32,615,000.[1]

In addition, the court "must also consider the substantial affirmative relief when evaluating the overall benefit to the class." *Beesley*, 2014 U.S.Dist LEXIS 12037 at 5 (citing MANUAL FOR COMPLEX LITIGATION (Fourth) §21.71 (2004), *Principles of the Law of Aggregate Litigation*, A.L.I., §3.13(b); cf. *Blanchard*, 489 U.S. at 95 (1989).

Here, the value of the affirmative relief is indeed substantial. Defendants have agreed, during the three-year settlement period to: (1) conduct a Request for Proposal ("RFP") competitive bidding process for recordkeeping services to begin within one year after the settlement effective date; (2) conduct a RFP competitive bidding process for investment consulting services to begin within one year after the settlement effective date; (3) refrain from receiving compensation for administrative services provided to the Plan other than reimbursement of direct expenses from the Plan as permitted by ERISA; (4) pay fees to the Plan recordkeeper on a flat fee or fee per participant basis; (5) provide participant statements that comply with all applicable DOL participant disclosure regulations and that include: a disclosure of all Plan expenses paid by the participant, directly or through investment options; a list of all transaction fees paid by the

---

[1] *Abbott v. Lockheed Martin Corp.*, No. 06-701, Doc. 497 at 47 (S.D.Ill. Apr. 14, 2015)(citing Peter Brady, *Marginal Tax Rates and the Benefits of Tax Deferral,* Investment Company Institute, Sept. 17, 2013, available at http://www.ici.org/viewpoints/view_13_marginal_tax_and_deferral).

participant; benchmarks for each fund; and statements, in dollar terms, of the money paid by the participant in administrative recordkeeping costs and for each investment option; and (6) consider the use of collective investment trusts or separately-managed accounts and, if affiliated collective trusts are used, secure the lowest cost of participation offered to any other investor with the same or less assets to invest, and seek the lowest cost of participation offered for non-affiliated collective trusts. In addition, the Plan's fiduciary committee for investment selection ("KIC") will not have any member who is an executive of Columbia Management Investment Advisors, LLC or its investment management affiliates, or any member who reports, directly or indirectly, to such an executive. KIC shall maintain exclusive authority over the selection, monitoring, and retention of all investment options in the Plan, and any input received from sources outside of the KIC shall be considered advisory only. The terms of the settlement will also be reviewed by an independent fiduciary.

These benefits represent a tremendous value to the Plan above and beyond the monetary settlement.[2] Plaintiffs have engaged Dr. Stewart Brown, a nationally recognized economist and authority on investment costs, to provide the Court with an estimate of the present value of the fee reductions the Plan can expect to enjoy as a result of Class Counsel's effort. Based on the fee reductions alone, the benefit to the class is estimated at $30,683,564. Brown Decl. ¶¶6, 7.

Having committed to these limitations for the three-year settlement period, it is unlikely Defendants would discontinue them. Thus, the present value of the enhanced

---

[2] Declaration of Mary Ellen Signorille ("Signorille Decl.") ¶12.

returns to the Plan exceeds the present value as calculated by Dr. Brown because those changes will likely continue indefinitely.

Further, as discussed above, the settlement's provision for tax-deferred distributions adds an additional 18.6% to the monetary benefit to the class. Adding the benefit of tax deferral to the monetary relief, and including the value of the non-monetary relief calculated by Dr. Brown, the total value to the class is $63,298,564. Class Counsel's requested fee constitutes only 14.5% of this benefit to the class.

### 2. Class Counsel took on extraordinary risk in litigating this ERISA fiduciary breach class action.

Class Counsel pioneered excessive fee litigation in 401(k) plans.[3] Indeed, as noted by senior staff attorney with the AARP Foundation Litigation, Mary Ellen Signorille, Class Counsel "is at the forefront of 401(k) excessive fee litigation." Signorille Decl. ¶9. Even in an ordinary ERISA fiduciary breach case, establishing liability for a fiduciary breach is exceedingly difficult.[4] Courts frequently defer to the decisions of ERISA fiduciaries. Therefore, Defendants win outright in many ERISA cases. See, e.g., *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009); *Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011); *Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2011). Even if the plaintiff can prove a fiduciary breach, the issues of causation and the proper measure of damages also are hotly contested. See *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 364 (4th Cir. 2014)(dispute over causation standard); *Tussey v. ABB, Inc.*, 746 F.3d 327, 339 (8th Cir.

---

[3] Floyd Norris, *What a 401(k) Plan Really Owes Employees*, New York Times, Oct. 16, 2014, available at http://www.nytimes.com/2014/10/17/business/what-a-401-k-plan-really-owes-employees.html?_r=0.

[4] Declaration of Garrett Wotkyns ("Wotkyns Decl.") ¶¶4−6.

2014), cert. denied, 135 S.Ct. 477 (2014)(remanding to the district court to reevaluate its method of calculating damages under ERISA for imprudent selection of proprietary mutual fund and suggesting, in dicta, that the measure be less-favorable to the class).

Here, Defendants asserted substantial defenses to each of Plaintiffs' claims, as detailed in their Answer and summary judgment briefing. Docs. 242, 512. This includes Defendants' argument that evidence of allegedly conflicted statements and relationships after the initial inclusion of the proprietary mutual funds were irrelevant to Plaintiffs' claims that the selections of these investments, in the first instance, violated ERISA. *Id*. Even if liability had been established, Defendants had viable arguments that the damages should be limited. In fact, Defendants had moved to exclude Plaintiffs' expert's damages opinions as unreliable, and untethered to the relevant damages standards in *Tussey*. Doc. 566. A hearing on that motion was pending at the time of settlement. Doc. 592. Thus, recovery at trial was far from certain even if liability were established. The fact that no other firm sought to bring this case indicates that most believed it was too risky. *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013).

> **3. The legal and factual issues in this case were difficult, complex, and novel, requiring a very substantial expenditure of time and money by Class Counsel without any certainty of success.**

ERISA fiduciary breach class actions are extremely complex, uncertain, sharply contested, and often protracted, and require a willingness by class counsel to risk very significant resources in time and money. Wotkyns Decl.¶4. The fact that Class Counsel are virtually alone in their willingness to handle ERISA fiduciary breach cases of this scope further weighs in favor of the requested award. Signorille Decl. ¶9. "Lack of

competition not only implies a higher fee but also suggests that most members of the ...

bar saw this litigation as too risky for their practices." *Silverman*, 739 F.3d at 958

(referring to the securities litigation bar, but even more applicable to the ERISA bar in

this case). "The greater the risk of walking away empty-handed, the higher the award

must be to attract competent and energetic counsel." *Id*.

In granting final approval of the settlement in another case brought by Class Counsel

and awarding one-third of the monetary portion of the settlement, the Honorable Joe Billy

McDade observed that achieving a favorable result in this type of case required

extraordinary efforts:

> This litigation entails complicated ERISA claims that are not only dependent on
> the statute but also on various regulations that implement ERISA. These claims
> also are relatively unique with limited case authority in support.

*Martin v. Caterpillar, Inc*., No. 07-1009, 2010 U.S.Dist.LEXIS 82350 at 7 (C.D.Ill. Aug.

12, 2010). As in *Martin*, the class settlement here "represents a significant boon to class

members in light of the complexity of this litigation, the potential for protracted

litigation, and the strength of the available defenses recognized in *Hecker*." *Id*.

(referencing *Hecker,* 556 F.3d 575, affirming dismissal of a complaint in a 401(k)

fiduciary breach class action).

### 4.  Class Counsel demonstrated extraordinary skill throughout the case.

Courts also commonly consider the quality of class counsel's legal services in

determining the market rate. *Yarrington*, 697 F.Supp.2d at 1061–62. Class Counsel's

performance had to be of high quality even to simply engage in three-and-one-half years

of litigation with well-funded Defendants represented by highly-qualified national attorneys, and especially so to achieve this significant settlement for the class. Wotkyns Decl. ¶4. In order to obtain this settlement, Class Counsel risked millions of dollars in un-reimbursed attorneys' time, $782,209.69 in out-of-pocket costs, and the possibility of a cost award in favor of Defendants. See *Hecker,* 556 F.3d at 591. Unless that risk is compensated with a commensurate award, no firm, no matter how large or well-financed, will have the incentive to even consider pursuing a case such as this. Wotkyns Decl. ¶10.

This case was sharply contested throughout. Class Counsel successfully opposed Defendants' motions to dismiss and motion for summary judgment; developed the case through extensive discovery, including the review and analysis of over two million pages of complex documents; retained highly-qualified experts in finance, 401(k) plan recordkeeping, investment management and fiduciary practices; and fully prepared the case for trial.

Judges in other ERISA fiduciary breach cases settled by Class Counsel have commented on the quality of Class Counsel's services in successfully pursuing claims and obtaining favorable settlements in this complex area of litigation.[5] Recognizing the work of Class Counsel as exceptional and approving fees of one-third of the monetary recovery in a similar settlement, the U.S. District Court Judge G. Patrick Murphy stated:

> Schlichter, Bogard & Denton's work throughout this litigation illustrates an exceptional example of a private attorney general risking large sums of money and investing many thousands of hours for the benefit of employees and retirees. No

---

[5] Class Counsel is at the forefront of litigation of this type. Signorille Decl. ¶9. Indeed, unlike most areas of the law, virtually no cases of this type had been brought by private firms before Plaintiffs' attorneys filed these types of cases, including this case. *Id.*

> case had previously been brought by either the Department of Labor or private attorneys against large employers for excessive fees in a 401(k) plan. Class Counsel performed substantial work…, investigating the facts, examining documents, and consulting and paying experts to determine whether it was viable. This case has been pending since September 11, 2006. Litigating the case required Class Counsel to be of the highest caliber and committed to the interests of the participants and beneficiaries of the General Dynamics 401(k) Plans.

*Will v. General Dynamics*, No. 06-698, 2010 U.S.Dist.LEXIS 123349 at 8–9 (S.D.Ill. Nov. 22, 2010). U.S. District Court Judge David R. Herndon, also approving fees of one-third of the monetary recovery in a similar settlement, echoed those thoughts. *Beesley*, 2014 U.S.Dist.LEXIS 12037 at 8 ("Litigating this case against formidable defendants and their sophisticated attorneys required Class Counsel to demonstrate extraordinary skill and determination.").

The quality of Class Counsel's services is reflected not only in the recovery to Ameriprise's 401(k) plan, but in the effect of this litigation in lowering costs for workers and retirees throughout the United States. See, e.g., Linda Stern, *Stern Advice- How 401(k) Lawsuits Are Bolstering Your Retirement Plan*, REUTERS (Nov. 5, 2013)(fee litigation brought by Class Counsel has had a "humongous" impact, according to CEO of 401(k) plan analysis firm Brightscope, Inc.).[6] The AARP similarly notes that "[t]his case and other similar cases brought by Schlichter Bogard & Denton have contributed to measurable reductions in fees paid by 401(k) plan participants throughout the United States, through heightened awareness and scrutiny of fees, self-dealing, and imprudent investment options in 401(k) plans." Signorille Decl. ¶11.

---

[6] Available at http://www.reuters.com/article/2013/11/05/us-column-stern-advice-idUSBRE9A40S320131105.

As another U.S. District Court Judge, Harold A. Baker, observed in approving a

settlement and awarding Class Counsel one-third of the monetary portion of the

settlement in a similar case:

> Class Counsel's enforcement of ERISA's fiduciary obligations has contributed to
> rapid reductions in the level of 401(k) recordkeeping fees paid across the country.
> The law firm Schlichter, Bogard & Denton is the leader in 401(k) fee litigation.
> One independent investment advisory company, NEPC, has found that 401(k)
> recordkeeping fees have dropped $38 per account per year since Class counsel
> filed their first 401(k) fee cases in 2006. They attribute the fee reductions to
> improved fee disclosure requirements from the Department of Labor and attention
> brought by 401(k) fee litigation. The Department of Labor reports an estimated 73
> million accounts in the United States. Accordingly, the fee reduction attributed to
> Schlichter, Bogard & Denton's fee litigation and the Department of Labor's fee
> disclosure regulations approach $2.8 billion in annual savings for American
> workers and retirees.

*Nolte v. Cigna Corp*., No. 07-2046, 2013 U.S.Dist.LEXIS 184622 at 6 (C.D.Ill Oct. 15,

2013)(internal citations omitted). Judge Baker noted that Schlichter, Bogard & Denton, as

the "preeminent firm in 401(k) fee litigation", has "invested such massive resources and

persevered in the face of the enormous risks of representing employees and retirees in

this area." *Id.* at 3–4.

### 5.   Class counsel expended significant time and resources.

To date, Class Counsel have spent 27,991.40 hours of attorney time and 2,716.00

hours of legal assistant time litigating this case. A breakdown of these hours by attorney

experience is attached. See Declaration of Sheri O'Gorman ("O'Gorman Decl.") ¶2.

Class Counsel have exhibited diligence and efficiency throughout the litigation, resulting

in a favorable result for the class. This Court has previously found that class counsel

expending 5,453.5 hours to litigate and settle a $16.5 million settlement supported a one-third attorneys' fee award. *Yarrington,* 697 F.Supp.2d at1063.

After settlement, Class Counsel have committed to keeping the class informed at no cost to the class, including through the settlement website and through direct calls with class members. Meanwhile, Class Counsel will continue to oversee and monitor compliance with the Settlement Agreement for years with no expectation of, or request for, additional fees, and bear the risk of paying half of the settlement's costs incurred, including the notice, if the settlement fails for any reason.

### 6. The reaction of the class favors approval.

Since this settlement was reached, Class Counsel have received calls from absent class members, but have not received any complaints about the terms of the settlement or Class Counsel's requested fee. Approximately 46,200 notices will be mailed to class members on May 14, 2015, and the objection deadline is June 13, 2015. Schlichter Decl. ¶18.

### 7. The comparison between the requested attorney fee percentage and percentages awarded in similar cases supports Class Counsel's requested attorney fee award.

"Substantial empirical evidence indicates that a one-third fee is a common benchmark in private contingency fee cases."[7] Theodore Eisenberg and Geoffery P. Miller, *Attorney Fees in Class Action Settlements: an Empirical Study*, 1 J. of Empirical Legal Studies 27, at 35 (2004). Courts in this circuit and this district have frequently awarded attorney fees

---

[7] Each of the named plaintiffs in this case agreed to a one-third contingency fee. Schlichter Decl. ¶24. Contingency fee arrangements are consistent with this area of practice. Wotkyns Decl. ¶¶9−10.

16

of 33 1/3%–36% of a common fund. See, e.g., *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002)(36% fee award reasonable); *Yarrington,* 697 F.Supp.2d at 1061–62 (one-third fee reasonable); *Carlson v. C.H. Robinson Worldwide, Inc.*, No. 02-3780, 2006 U.S.Dist.LEXIS 67108 at 20 (D.Minn. Sept. 18, 2006)(35.5% fee award reasonable); *In re E.W. Blanch Holdings, Inc. Sec. Litig.,* No. 01-258, 2003 U.S.Dist.LEXIS 26402 at 10 (D.Minn. June 16, 2003)(awarding 33.3% of a $20 million settlement); *KK Motors v. Brunswick Corp.,* No. 98-2307, Doc. 67 at 2–3 (D.Minn. March 6, 2000)(awarding 33.3% of $30 million settlement); *In re Airline Ticket Commission Antitrust Litig.,* 953 F. Supp. 280, 285–86 (D.Minn. 1997)(awarding 33.3% of $86 million fund); see also *In re Xcel Energy, Inc.*, 364 F.Supp.2d 980, 996 (D.Minn. 2005)(listing various settlements, including *In re Select Comfort Corp. Secs. Litig.*, No. 99-884, 2003 U.S.Dist.LEXIS 26409 (D.Minn. Feb. 28, 2003)(awarding 33.3% of the $5,750,000 settlement), and *In re Control Data Sec. Litig.*, No. 85-1341 (D.Minn. Sept. 23, 1994)(awarding 36.96% of $8 million fund)).

As to ERISA fiduciary breach litigation specifically, a one-third fee is the market rate. Courts have consistently awarded one-third fees in such cases in which Class Counsel have been involved. *Beesley,* 2014 U.S.Dist.LEXIS 12037 at 7; *Nolte,* 2013 U.S.Dist.LEXIS 184622 at 3–4; *Martin,* 2010 U.S.Dist.LEXIS 145111 at 6–7; *Will,* 2010 U.S.Dist.LEXIS 123349 at 7–8; *George v. Kraft Foods Global*, No. 08-3799, 2012 U.S.Dist.LEXIS 166816 at 2 (N.D.Ill. June 26, 2012). These cases demonstrate that a one-third fee is appropriate in cases of this type.

**8. The requested fee is also much less than even that available under a lodestar analysis.**

A lodestar analysis is not necessary to justify a percentage award of attorneys' fees, but can be used "to double-check the result of the 'percentage of the fund' method[.]" *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999). Class Counsel's requested fee of $9,166,666 is amply justified under a lodestar analysis, since it not even half of the $18.8 million fee Class Counsel would be entitled to under the lodestar analysis.

"To calculate the lodestar amount, the Court must multiply the reasonable number of hours expended by a reasonable hourly rate for each attorney performing the work." *Poechmann v. Alerus Fin., N.A.*, No. 10-4186, 2012 U.S.Dist.LEXIS 46387 at 6 (D.Minn. Jan 30, 2012). Class Counsel spent 27,991.4 hours of attorney time and 2,716 hours of legal assistant time litigating this case. O'Gorman Decl. ¶2. Class Counsel works solely on a contingent fee basis and thus does not charge its clients at an hourly rate. Without question, this litigation is national in scope with national law firms defending the case and other similar cases. In a recent ERISA fiduciary breach case, *Beesley*, 2014 U.S.Dist.LEXIS 12037 at 11–12, the court determined Class Counsel's appropriate rate to be $892/hour for attorneys with at least 25 years of experience, $757/hour for attorneys with 15–24 years of experience, $545/hour for attorneys with 5–14 years of experience, $394/hour for attorneys with 2–4 years of experience, $275/hour for Paralegals and Law Clerks, and $170/hour for Legal Assistants. Those rates updated a prior, 2010 blended rate of $514.60 for Class Counsel's efforts in another ERISA fiduciary breach action,

which the Eighth Circuit approved on appeal. *Tussey v. ABB, Inc.*, No. 06-4305, 2012

U.S.Dist.LEXIS 157428 at 13–14 (W.D.Mo. Nov. 2, 2012), affirmed in relevant part at

746 F.3d at 340.

However, to compensate counsel for the long delay in payment, the court must base

the attorney fee award on current rates or otherwise adjust the fee based on historical

rates to reflect its present value. *Perdue v. Kenny A.*, 559 U.S. 542 (2010) (quoting

*Missouri v. Jenkins*, 491 U.S. 274, 282 (1989)). Since the time that Judge Herndon

approved the fee rates in *Beesley* in 2014, law firm billing rates have increased.

According to a survey conducted by the legal consulting firm Altman Weil, "law firms

surveyed report a 4% increase in overall billing rates for 2014." Clay & Seeger, *2014:*

*Law Firms in Transition, An Altman Weil Flash Survey*, at ii.[8] Adjusting the approved

2014 rates accordingly, the reasonable 2015 hourly rates for Class Counsel are as

follows:

| Biller | Hours[9] | Rate | Total |
|---|---|---|---|
| Attorney (25+ years) | 2,842.40 | $928.00 | 2,637,747.20 |
| Attorney (15–24 years) | 5,141.00 | $787.00 | 4,045,967.00 |
| Attorney (5–14 years) | 20,008.00 | $567.00 | 11,344,536.00 |
| Paralegal | 2,591.90 | $286.00 | 741,283.40 |

---

[8] Available at http://www.altmanweil.com/dir_docs/resource/f68236ab-d51f-4d81-8172-96e8d47387e3_document.pdf.

[9] The lodestar is understated because Class Counsel will have substantial additional time in the case in the future for no fee in order to monitor compliance with the settlement, and have undertaken even further risk of substantial expense if a dispute arises or if the settlement is not finally approved. Class Counsel will also incur additional future expenses without cost to the class, including expenses related to maintaining a class website and responding to questions from class members.

| Biller | Hours[9] | Rate | Total |
|---|---:|---|---:|
| Law Clerk | 109.90 | $286.00 | 31,431.40 |
| Legal Assistants | 14.20 | $177.00 | 2,513.40 |
| Total | | | $18,803,478.40 |

Based on the 2015 rates, Class Counsel would be entitled to a lodestar fee of $18.8 million. Class Counsel's requested fee award of $9,166,666 is less than half of that lodestar; a level which is eminently reasonable under a lodestar analysis. Thus, if the requested fee is approved, Class Counsel will not only be paid less than half of the billing rate applicable if they were being reimbursed monthly for their time, but will also receive nothing for the massive risk they have undertaken.

**B. The Court should also award reimbursement of Class Counsel's costs.**

Reimbursement of the substantial litigation expenses that Class Counsel advanced in prosecuting this case is also warranted. Fed.R.Civ.P. 23(h). As a leading treatise states:

> An attorney who creates or preserves a common fund by judgment or settlement for the benefit of a class is entitled to receive reimbursement of reasonable fees and expenses involved. The equitable principle that all reasonable expenses incurred in the creation of a fund for the benefit of a class are reimbursable proportionately by those who accept benefits from the fund authorizes reimbursement of full reasonable litigation expenses as costs of the suit in contrast to the more narrowly defined rules of taxable costs of suit under Fed. R Civ. P. 54 (d).... The prevailing view is that expenses are awarded in addition to the fee percentage.

Alba Conte, 1 Attorney Fee Awards § 2:19 (3d ed.); see also *Sprague v. Ticonic*, 307 U.S. 161, 166–67 (1939)(recognizing a federal court's equity power to award costs from a common fund); *Yarrington*, 697 F.Supp.2d at 1067 ("Reasonable costs and expenses

incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement.").

"Counsel in common fund cases may recover those expenses that would normally be charged to a fee paying client." *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, No. 05-1708, 2008 U.S.Dist.LEXIS 17535 at 16 (D.Minn. Mar 7, 2008)(quoting *In re Infospace, Inc.*, 330 F.Supp.2d 1203, 1216 (W.D.Wash. 2004)); *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'"). "[R]educing [litigation expenses] because the district judge thinks costs too high in general is not" permissible. *In re Synthroid Marketing Litig.*, 264 F.3d 712, 722 (7th Cir. 2001).

Reimbursable expenses include many litigation expenses beyond those narrowly defined "costs" recoverable from an opposing party under Rule 54(d), such as: expert fees; travel; long-distance and conference telephone; postage; delivery services; and computerized legal research. Alba Conte, 1 Attorney Fee Awards § 2:19 (3d ed.); *see also In re BankAmerica Corp. Sec. Litig.,* 228 F.Supp.2d 1061, 1066 (E.D.Mo. 2002)(approving reimbursement to class counsel of: "expert witness costs; computerized research; court reporters; travel expenses; copy, phone and facsimile expenses; mediation; and class notification"); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004)("The expenses incurred—which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review are the type for which 'the paying, arms' length market'

reimburses attorneys. For this reason, they are properly chargeable to the Settlement."); *Anwar v. Fairfield Greenwich Ltd.*, No. 09-118, 2012 U.S.Dist.LEXIS 78929 at 9 (S.D.N.Y. June 1, 2012)("Plaintiffs' Counsel seek reimbursement for expenses such as mediation fees, expert witness fees, electronic legal research, photocopying, postage, and travel expenses, each of which is the type 'the paying, arms' length market' reimburses attorneys.").

Counsel brought this case without guarantee of reimbursement or recovery, so they had a strong incentive to keep costs to a reasonable level, and they did so. See *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010)(recognizing that counsel with contingent fee agreement has a "strong incentive to keep expenses at a reasonable level"). However, given the complexity of this case, the costs incurred were substantial, and consistent with what would be expected in a typical case of this size. An empirical study of the costs awarded in class action litigation found that the average cost award was equal to 4% of the relief obtained for the class. See Theodore Eisenberg and Geoffery P. Miller, *Attorney Fees in Class Action Settlements: an Empirical Study*, 1 J. of Empirical Legal Studies 27, 70 (2004). This study suggests that "requests falling within one standard deviation above or below the mean should be viewed as generally reasonable." *Id*. at 74. The total amount of costs here is less than 3% of the total recovery, well within the range to be considered "generally reasonable."

A description of these costs and expenses, broken down by category, is contained in the attached Declaration of Sheri O'Gorman. The costs and expenses, totaling $782,209.69, are the types of costs and expenses that are routinely reimbursed by paying

clients, such as experts' fees, deposition expenses, travel, and photocopying costs. O'Gorman Decl. ¶3. Class Counsel have incurred these expenses over the course of years, but do not seek interest to compensate them for the time value of this money or the costs associated with advancing these expenses to the class. In light of the length and complexity of this litigation, Class Counsel's request for reimbursement of costs and expenses should be approved as fair and reasonable.

**C. The Court should approve incentive awards for the class representatives.**

The Court may compensate class representatives for their service to the class out of the common fund. *Tussey,* 2012 U.S.Dist.LEXIS 157428 at 33–34 (awarding $25,000 each to class representatives in ERISA fiduciary breach litigation). The relevant considerations in determining whether to grant an incentive award to named plaintiffs include actions plaintiffs took to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort plaintiffs expended in pursuing the litigation. *U.S. Bancorp*, 291 F.3d at 1038. Named Plaintiffs Roger Krueger, Jeffrey Olson, Deborah Tuckner, Susan Wones and Margene Bauhs have been active, hands-on participants in this litigation, expending significant amounts of their own time to benefit the class. They came forward to initiate this action, took substantial risk, and thereafter remained in contact with Class Counsel. They responded to document requests and interrogatories; reviewed and approved pleadings; assisted with discovery; and were involved in settlement. This involvement included personally attending the all-day mediation facilitated by Magistrate Judge Mayeron, staying well

into the night to protect the interest of the class.[10] They prepared for and were extensively questioned during depositions by Defendants' counsel. Schlichter Decl. ¶25.

Further, as *Hecker* illustrates, the named plaintiffs risked a judgment against them for Defendants' costs to obtain this historic recovery for the class.[11] Mr. Olson, was currently employed at Ameriprise at the time he willingly joined in the litigation. During the course of the litigation, Ameriprise claimed to have eliminated Mr. Olson's position at the company, terminating his employment at Ameriprise. Each of the named plaintiffs risked alienation of their peers and the community by stepping forward against a significant employer in their community. In light of their faithful commitment to the class, each of the five named plaintiffs should be given an incentive award of $25,000 from the settlement fund.

The total award for all named plaintiffs represents just 0.45% of the total settlement fund. Awards of $25,000 for a named plaintiff award and total named plaintiff awards of less than 1% of the fund are typically awarded in comparable cases. See, e.g., *Tussey,* 2012 U.S.Dist.LEXIS 157428 at 34; *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *Beesley,* 2014 U.S.Dist.LEXIS 12037 at 8; *Nolte,* 2013 U.S.Dist.LEXIS 184622 at 14–15; *Will*, 2010 U.S.Dist.LEXIS 123349 at 4.

---

[10] With the consent of Judge Mayeron, Mr. Olson was unable to personally attend the mediation. He did, however, actively participate throughout the day and night via telephone and remained an active participant in the settlement even after the mediation.

[11] *Hecker*, also a case handled by Class Counsel herein, was the first 401(k) fee case that went to a Court of Appeals. Besides affirming dismissal of the complaint, the Seventh Circuit also upheld an order assessing costs against the named plaintiffs in the amount of $219,211. 556 F.3d at 591.

## III.    Conclusion

For these reasons, Plaintiffs request that the Court approve a fee award of $9,166,666

and a cost award of $782,209.69 to Class Counsel, and incentive awards of $25,000 to

each of the five named plaintiffs and class representatives: Roger Krueger, Jeffrey Olson,

Deborah Tuckner, Susan Wones and Margene Bauhs.

Respectfully submitted,

May 13, 2015                         s/Jerome J. Schlichter
                                     Jerome J. Schlichter (admitted *pro hac vice*)
                                     Schlichter Bogard & Denton LLP
                                     100 South Fourth Street
                                     St. Louis, MO 63102
                                     (314) 621-6115
                                     (314) 621-7151 (fax)
                                     jschlichter@uselaws.com


                                     Thomas W. Pahl (#243012)
                                     Thomas A. Harder (#158987)
                                     Foley & Mansfield
                                     250 Marquette Avenue, Suite 1200
                                     Minneapolis, MN 55401
                                     (612) 338-8788
                                     (612) 338-8690 (fax)
                                     tpahl@foleymansfield.com
                                     tharder@foleymansfield.com

                                     Attorneys for Plaintiffs